SMITH, Appellee,

v.

GENERAL MOTORS CORPORATION et al., Appellants.

[Cite as *Smith v. Gen. Motors Corp.*, 168 Ohio App.3d 336, 2006-Ohio-4283.]

Court of Appeals of Ohio,
Second District, Montgomery County.

Nos. 21270 and 21271.

Decided Aug. 18, 2006.

338

Ronald L. Burdge and Elizabeth A. Wells, for appellee.

Timothy C. Sullivan, for appellants.

SUMNER E. WALTERS, Judge.

{¶ 1} Appellants, Walker Auto Group ("Walker") and General Motors Corporation ("GM"), appeal from the judgment of the trial court in favor of plaintiff-appellees, Sandra and Anthony Smith. After a jury trial, a verdict was returned against GM for compensatory damages of $3,936 and against Walker for compensatory damages of $840 and punitive damages of $35,000. Subsequently, the Smiths filed a motion to treble the damages, which the trial court granted. The trial court also awarded them attorney fees in the amount of $55,525.

{¶ 2} Walker sets forth three assignments of error, claiming that the trial court erred in admitting the testimony of the plaintiffs' expert witness and that the trial court erred in overruling their motions for a directed verdict and judgment notwithstanding the verdict ("JNOV") and in failing to rule on their motion for a new trial on the issues of fraud and punitive damages. Walker and GM jointly claim that the trial court awarded an excessive amount of attorney fees and costs to the Smiths.

{¶ 3} Because we determine that the trial court properly admitted the testimony of plaintiffs' expert witness, who testified on rebuttal that defendants' actions were not "bona fide" error, but were in fact improper sales tactics, and because we also determine that the trial court was correct to deny defendants' motion for JNOV and motion for a new trial and that the amount of attorney fees awarded by the trial court was reasonable, we affirm the judgment of the trial court.

{¶ 4} In 2001, the Smiths purchased a 2001 Pontiac Montana from the Walker automotive dealership. Shortly after purchasing the new vehicle, the Smiths discovered that the vehicle had a serious water leak, and after multiple attempts by the dealership to repair the leak, the Smiths contacted GM and requested that the vehicle be replaced. After contacting GM and being informed that the 2001 vehicle would be replaced at no cost, the Smiths were sent a "settlement offer" letter and a "release agreement." The settlement offer letter stated, "TOTAL COST TO CUSTOMER $0.00." The Smiths signed these documents at the Walker dealership on October 25, 2001.

{¶ 5} On November 8, 2001, the Smiths went to the Walker dealership and received a new 2002 Pontiac Montana in exchange for their defective 2001 Pontiac Montana. The Walker dealership transferred the license plates from the old van to the new van and also activated the "OnStar" system in the new van. No paperwork was signed nor money exchanged on November 8. The Smiths informed the Walker dealership that they were going to have a remote starter put in their new van the next day, and in order to facilitate this, Walker made them an extra key to the new vehicle. The Smiths then left the Walker dealership in the 2002 Pontiac Montana. They were not informed by Walker that they did not yet own the 2002 vehicle, nor that they would be required to return to the dealership to fill out additional paperwork to complete the transaction.

{¶ 6} On November 14, 2001, the Smiths were asked to return to the Walker dealership to sign some paperwork. After arriving, the Smiths were informed that their old loan had been paid off and that they would be required to sign for a new loan on the 2002 vehicle at an interest rate of 2.9 percent, even though their loan on the 2001 vehicle had an interest rate of 0.9 percent. They were also informed that their original $16,000 down payment on the 2001 vehicle would not be fully credited towards the 2002 vehicle, despite the fact that the total cost of

the 2002 vehicle was less than the total cost of the 2001 vehicle. The Smiths had been under the impression, based on representations of Walker and GM, that they would receive the replacement vehicle and continue payment for it under the terms of the original loan. The Smiths objected to the new loan terms, but were informed that they would be unable to leave the dealership in the 2002 vehicle unless they signed the new loan agreement. The Smiths were further informed that the 2001 "lemon" vehicle was no longer available had they wished to keep it. Eventually, the Smiths relented and signed the paperwork, agreeing to the new loan terms.

{¶ 7} The Smiths then contacted an attorney and filed this suit, asserting that Walker and GM had violated numerous provisions of the Ohio Consumer Sales Practices Act. After a jury trial, a general verdict was returned against GM for $3,936 and against the Walker dealership for $35,840, of which $35,000 was a punitive-damage award. Upon motion pursuant to R.C. 1345.09(B), the compensatory damages were trebled. The Smiths were also awarded attorney fees. Walker and GM have appealed from the judgment of the trial court, although GM is appealing only the award of attorney fees.

{¶ 8} Appellants have presented four assignments of error.

### First Assignment of Error

{¶ 9} Walker's first assignment of error is "The trial court committed reversible error when it admitted testimony of Plaintiffs' putative expert David Stivers." At trial, the judge permitted the Smiths to call David Stivers as an expert witness on rebuttal and allowed him to testify about the "tactics" used by appellants. Walker had a continuing objection to all of Stivers's testimony. Walker argues four separate issues under the first assignment of error.

{¶ 10} Walker first asserts that the opinions expressed by Stivers were inadmissible under Evid.R. 702(A) because the opinions concerned matters within the knowledge or experience of laypersons.

{¶ 11} Whether to allow expert testimony is within the sound discretion of the trial court. *State v. Awkal* (1996), 76 Ohio St.3d 324, 331, 667 N.E.2d 960. Thus, we will not overturn a trial court's decision to permit expert testimony unless there is an abuse of that discretion. Id. The expert is not required to be a specialist; he need only have knowledge "on the particular subject superior to that possessed by an ordinary juror." *State Auto. Mut. Ins. Co. v. Chrysler Corp.* (1973), 36 Ohio St.2d 151, 159–160, 65 O.O.2d 374, 304 N.E.2d 891.

{¶ 12} Walker contends that the issue before the trial court was simply whether they had breached a contract with the Smiths and that simple contract issues are within the knowledge and experience of laypersons. The Smiths

counter, and the trial court agreed, that the consumer violations that Walker asserted were bona fide error could be disputed by someone who is familiar with the industry and with the documents involved in the transaction. We agree that the trial court properly permitted the expert testimony of David Stivers.

{¶ 13} The trial court limited Stivers to testifying only on rebuttal, as a response to Walker's defense that the contract was breached only as a result of bona fide error. Stivers testified that in his experience as a former sales and finance manager in the auto industry and in his present role as an auto industry consultant, Walker's actions were intentional because they used certain tactics that are known in the auto industry, but are not known to a layperson. Stivers explained numerous terms, such as "de-horsing," "collateral swap" and "trade-repurchase," that are most likely unknown to a layperson. Stivers explained terms that were present in the paperwork for the transaction, explained how a typical transaction involving a "collateral swap" should work, and opined that some of the actions taken by Walker were not bona fide errors as Walker claimed, but were intentional spurious sales tactics. A layperson is most likely unfamiliar with terms like "collateral swap" and "trade-repurchase"; furthermore, a layperson may not understand that the actions of Walker were not mistakes, but could in fact have been willful planned tactics meant to defraud the consumer. Therefore, we conclude that the trial court did not abuse its discretion in permitting Stivers to testify as an expert, because the terminology and sales tactics used in this transaction were beyond the experience of an ordinary juror.

{¶ 14} Walker next asserts that Stivers did not have the "specialized knowledge, skill, experience, training or education" to permit him to provide expert-opinion testimony.

{¶ 15} The record indicates that Stivers has been involved in the automotive industry either directly or indirectly for 30 years. Stivers held various positions, including sales manager and general finance manager, while directly employed with various car dealerships. Stivers has also attended seminars sponsored by the various auto manufacturers, including GM, and recently was asked to speak at a seminar on warranty and disclosure issues. Finally, the record indicates that Stivers has testified as an auto-industry expert in numerous other cases throughout the country. Thus, we conclude that the trial court did not abuse its discretion in permitting Stivers to testify as an expert.

{¶ 16} Walker also asserts that Stivers's testimony was inadmissible under Evid.R. 403(A) "because its probative value was substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury."

{¶ 17} The admissibility of evidence under Evid.R. 403 is also left to the sound discretion of the trial court and will not be reversed absent an abuse of that discretion. *State v. Combs* (1991), 62 Ohio St.3d 278, 581 N.E.2d 1071. For evidence to be excluded under Evid.R. 403(A), its probative value must be *"substantially outweighed"* by possible unfair prejudice, confusion of the issues, and misleading of the jury. (Emphasis added.) Id. at 284, 581 N.E.2d 1071.

{¶ 18} Review of Stivers's testimony reveals that while some of his opinions were irrelevant to the issues before the trial court, any testimony that was improperly admitted was harmless error. The majority of Stivers's testimony consisted of his analysis and interpretation of the actions taken by Walker, which were relevant to the issues before the trial court. Walker had the opportunity to discredit both Stivers as an expert and his opinions in the matter through cross-examination. Thus, we conclude that Evid.R. 403(A) does not preclude Stivers's testimony.

{¶ 19} Finally, Walker asserts that Stivers's testimony was barred by Evid.R. 404 because his testimony was inadmissible character evidence. Walker states that "[e]ssentially, Plaintiffs' witness [Stivers] testified that car dealerships, including Walker Pontiac, are disreputable businesses who train their employees to mislead and deceive consumers like [the Smiths]."

{¶ 20} Our review of Stivers's testimony does not reveal any specific instances of character evidence that should have been excluded. Stivers testified only that some dealerships in the past have engaged in nefarious sales tactics and that as a former member of the automotive dealer industry, he could identify, by examining the actions taken by Walker, whether it was likely that Walker was employing improper sales tactics. Stivers never testified to specific knowledge of Walker's character, or that Walker was acting in conformity with its "bad" character. Indeed, Stivers testified only that based on his review of the events, Walker was, on this specific occasion, using improper sales tactics when dealing with the Smiths. Therefore, we conclude that the trial court was not required to exclude Stivers's testimony as inadmissible character evidence.

{¶ 21} In sum, we conclude that the trial court did not abuse its discretion in permitting Stivers to testify as an expert and to give his opinion regarding Walker's actions. Accordingly, the first assignment of error is overruled.

### Second Assignment of Error

{¶ 22} Walker's second assignment of error is "The trial court committed reversible error when it denied Defendant Walker's motions for directed verdict and judgment notwithstanding the verdict on Plaintiffs' claims for fraud and punitive damages." Walker asserts that the pleadings and evidence presented by the Smiths are insufficient to permit a reasonable jury to conclude that Walker

misrepresented or concealed a material fact, and in so doing, acted with actual malice.

{¶ 23} The standard of review for a ruling on a motion for a directed verdict and a motion for JNOV are the same. *Nickell v. Gonzalez* (1985), 17 Ohio St.3d 136, 137, 17 OBR 281, 477 N.E.2d 1145. Our review of the rulings on the motions is de novo. *Schafer v. RMS Realty* (2000), 138 Ohio App.3d 244, 257, 741 N.E.2d 155. The reviewing court is not permitted to weigh the evidence or credibility of the witnesses when reviewing the ruling on a motion. *Ruta v. Breckenridge–Remy Co.* (1982), 69 Ohio St.2d 66, 68, 23 O.O.3d 115, 430 N.E.2d 935. An appellate court must affirm the trial court's decision to deny a motion for JNOV if there is substantial evidence upon which reasonable minds could come to different conclusions regarding the essential elements of the claims. *Posin v. A.B.C. Motor Court Hotel* (1976), 45 Ohio St.2d 271, 275, 74 O.O.2d 427, 344 N.E.2d 334.

{¶ 24} Walker asserts that the Smiths neither alleged in their complaint nor provided any evidence at trial showing that a false representation or concealment of a material fact was made, which constitutes fraud.

{¶ 25} First, an examination of the original complaint reveals that the fifth claim, mistakenly labeled "Fourth Claim" in the complaint, is for "Fraud and Deceit" and alleges that Walker made a false representation of a material fact.

{¶ 26} Second, upon our review of the record and the evidence submitted at trial, we conclude that there is substantial evidence upon which reasonable minds could come to different conclusions regarding the elements of a fraud claim, and thus the trial court properly denied Walker's motions for directed verdict and JNOV.

{¶ 27} Initially, Walker represented to the Smiths, through both paperwork and actual conversations, that the cost of the replacement vehicle to the Smiths would be nothing. Representations were also made that the Smiths would maintain their initial loan and that the replacement vehicle would simply be substituted as the collateral under the initial loan agreement. Finally, on November 8, 2001, Walker turned over the new 2002 Pontiac Montana, activated the OnStar system, made the Smiths an extra key so that they could have a remote starter installed the next day, and transferred the license plates from the old "lemon" vehicle to the new replacement vehicle. Walker took all these actions on November 8, 2001, without informing the Smiths that the transaction was not yet complete, that the Smiths did not yet own the 2002 vehicle, or that they would be required to sign for a new loan six days later. We conclude that even if there was no actual malice on the part of Walker, reasonable minds could conclude that their actions were "particularly gross or egregious" and thus constituted fraud, which entitled the Smiths to an award of punitive damages.

See, e.g., *Jenkins v. Clark* (1982), 7 Ohio App.3d 93, 101, 7 OBR 124, 454 N.E.2d 541 ("the intention to mislead may be inferred and in some cases presumed depending upon the circumstances giving rise to the claim").

{¶ 28} In sum, we find that the trial court did not err when it overruled Walker's motion for a directed verdict and motion for JNOV, and, accordingly, the second assignment of error is overruled.

### Third Assignment of Error

{¶ 29} Walker's third assignment of error is "The trial court committed reversible error when it failed to rule on Defendant Walker's motion for a new trial on Plaintiffs' fraud and punitive damage claims." Because the trial court has never journalized a specific decision granting or denying the motion for a new trial, we shall treat it as having been overruled. Walker argues three separate issues under this assignment of error.

{¶ 30} We review the decision of a trial court in deciding whether to grant a motion for a new trial under an abuse-of-discretion standard. *Rohde v. Farmer* (1970), 23 Ohio St.2d 82, 52 O.O.2d 376, 262 N.E.2d 685, paragraph one of the syllabus.

{¶ 31} Walker first contends that the trial court abused its discretion by permitting Stivers to testify as an expert, and thus the trial court should have granted a new trial. We have already fully addressed this issue in the first assignment of error and concluded that the trial court did not abuse its discretion in permitting Stivers to testify. Therefore, we conclude that the trial court also did not abuse its discretion in denying the motion for a new trial with respect to its decision to permit Stivers to testify as an expert.

{¶ 32} Next, Walker claims that it was entitled to a new trial because the Smiths' fraud claim was not sustained by the weight of the evidence. This issue was addressed in the second assignment of error, and we concluded, using a de novo standard of review, that sufficient evidence existed to support the fraud claim. Thus, having concluded that sufficient evidence existed to deny a JNOV on the fraud claim, we also conclude that the trial court did not abuse its discretion in denying the motion for a new trial on the fraud claim.

{¶ 33} Finally, Walker asserts that it was entitled to a new trial on the fraud claim because the verdict for punitive damages was excessive. We disagree.

{¶ 34} The United States Supreme Court has stated that "the most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct." *State Farm v. Campbell* (2003), 538 U.S. 408, 419, 123 S.Ct. 1513, 155 L.Ed.2d 585; see, also, *Blust v.*

*Lamar Advertising Co.,* 157 Ohio App.3d 787, 2004-Ohio-2433, 813 N.E.2d 902. " 'Low compensatory damages and high punitive damages assessed by a jury are not in and of themselves cause to reverse the judgment or to grant a remittitur, since it is the function of the jury to assess the damages and, generally, it is not for the trial or appellate court to substitute its judgment for that of the trier of fact. A large disparity, standing alone, is insufficient to justify a court's interference with the province of the jury.' " *Wightman v. Consol. Rail Corp.* (1999), 86 Ohio St.3d 431, 438, 715 N.E.2d 546, quoting *Villella v. Waikem Motors, Inc.* (1989), 45 Ohio St.3d 36, 40, 543 N.E.2d 464. To determine whether a large punitive-damage award is appropriate, we consider whether there was a substantial harm, whether there is a continuing risk of future conduct, whether punitive damages would act as a deterrent of any future conduct, and the economic viability of the defendant. *Irvine v. Akron Beacon Journal,* 147 Ohio App.3d 428, 444, 2002-Ohio-2204, 770 N.E.2d 1105.

{¶ 35} Walker asserts that because the jury awarded the Smiths only $840 in compensatory damages, the punitive-damage award of $35,000 is excessive because it is more than 40 times greater than the compensatory award. However, we believe that given Walker's conduct in this case, the jury reasonably concluded that an award of $35,000 in punitive damages was appropriate. Further, the total compensatory damages awarded to the Smiths, after combining the damages caused by both appellants, is $4,776. The ratio of punitive damages to the total actual injury suffered is less than eight to one. Finally, we conclude that the large punitive-damage award is appropriate in order to deter Walker from future conduct of the kind that occurred in this case.

{¶ 36} In sum, we find the third assignment of error to be without merit, and it is overruled.

### Fourth Assignment of Error

{¶ 37} The fourth assignment of error, asserted by both Walker and GM, is "The trial court committed reversible error when it awarded to Plaintiffs an unreasonable amount of attorney fees and litigation expenses against Defendant General Motors and Defendant Walker." Walker and GM assert that an award of fees and expenses in the amount of $55,275 is unreasonable for a case that involves only a single injury and actual damages in the amount of $3,936.

{¶ 38} Initially, we point out that the total amount of actual damages in this case was $4,776, because the jury found GM responsible for damages in the amount of $3,936, and found Walker responsible for damages in the amount of $840.

{¶ 39} We review the trial court's decision to award attorney fees under an abuse-of-discretion standard. *Bittner v. Tri–County Toyota, Inc.*

(1991), 58 Ohio St.3d 143, 146, 569 N.E.2d 464. "When awarding reasonable attorney fees pursuant to R.C. 1345.09(F)(2), the trial court should first calculate the number of hours reasonably expended on the case times an hourly fee, and then may modify that calculation by application of the factors listed in DR 2–106(B)." Id. at 145, 569 N.E.2d 464. Furthermore, " '[i]t is well settled that where a court is empowered to award attorney fees by statute, the amount of such fees is within the sound discretion of the trial court. Unless the amount of fees determined is so high or so low as to shock the conscience, an appellate court will not interfere.' " Id. at 146, 569 N.E.2d 464, quoting *Brooks v. Hurst Buick–Pontiac–Olds–GMC, Inc.* (1985), 23 Ohio App.3d 85, 91, 23 OBR 150, 491 N.E.2d 345.

{¶ 40} Appellants assert that because their own attorney spent only approximately 120 hours on this case, it is unreasonable for the Smiths' attorney to have spent approximately 290 hours on the case. We find this argument to be without merit. We will not limit reasonable attorneys fees to the amount of time that was spent by the attorney for the losing party. The extra time that the Smiths' attorney spent working on the case is possibly what enabled the Smiths to prevail in this case. We accept the Smiths' attorney's word, as an officer of the court, that he spent 290 hours working on this case. The amount of fees awarded by the trial court is not so high as to "shock the conscience," and thus we conclude that the trial court did not abuse its discretion in awarding attorney fees in the amount of $55,275. Accordingly, appellants' fourth assignment of error is without merit and is overruled.

{¶ 41} Having overruled all of appellants' assignments of error, we affirm the judgment of the trial court.

Judgment affirmed.

GRADY, P.J., and WOLFF, J., concur.

SUMNER E. WALTERS, J., retired, of the Third Appellate District, sitting by assignment.