BITTNER, APPELLANT, *v.* TRI-COUNTY TOYOTA, INC., APPELLEE.

[Cite as Bittner *v.* Tri-County Toyota, Inc. (1991), 58 Ohio St. 3d 143.]

(No. 89-2009—Submitted November 27, 1990—Decided March 27, 1991.)

*Carl Morgenstern Co., L.P.A., Barbara L. Morgenstern, Burdge Law Office* and *Ronald L. Burdge,* for appellant.

*Randy J. Blankenship* and *Richard B. Uhle, Jr.,* for appellee.

*Lee I. Fisher,* attorney general, *Dianne Goss Paynter* and *Valerie A. Roller,* urging reversal for *amicus curiae,* Ohio Attorney General.

*Kalpana Yalamanchili,* urging reversal for *amicus curiae,* Ohio State Legal Services Association.

*Spater, Gittes, Schulte & Kolman, Frederick M. Gittes* and *Kathaleen B. Schulte,* urging reversal for *amici curiae,* Employment Lawyers' Association and National Lawyers Guild.

MOYER, C.J. At the outset, we reject the contention that the amount of attorney fees awarded pursuant to R.C. 1345.09(F) must bear a direct relationship to the dollar amount of the settlement, between the consumer and the supplier. The Act was amended in 1978 to include the payment of attorney fees "* * * to prevent unfair, deceptive, and unconscionable acts and practices, to provide strong and effective remedies, both public and private, to assure that consumers will recover any damages caused by such acts and practices, and to eliminate any monetary incentives for suppliers to engage in such acts and practices." (137 Ohio Laws, Part II, 3219.)

In order for private citizens to obtain redress under the Act, they first must be able to obtain adequate legal representation. Private attorneys may be unwilling to accept consumer protection cases if the dollar amount they are permitted to bill their adversary is limited by the dollar amount of the recovery, especially since monetary damages in many instances under the Act are limited to $200. An attorney may expend inordinately large amounts of time and energy pursuing a claim that reaps relatively small monetary benefits for a prevailing plaintiff. We agree with the observation of the United States Supreme Court when it said: "A rule of proportionality would make it difficult, if not impossible, for individuals with meritorious * * * claims but relatively small potential damages to obtain redress from the courts." *Riverside* v. *Rivera* (1986), 477 U.S. 561, 578.

In addition to addressing an individual wrong, pursuing a claim under the Act may produce a benefit to the community generally. A judgment for the consumer in such a case may discourage violations of the Act by others. Prohibiting private attorneys from recovering for the time they expend on a consumer protection case undermines both the purpose and deterrent effect of the Act.

In determining whether the

amount of the attorney-fee award is "reasonable," we first must look to the language of R.C. 1345.09(F)(2). The statute itself limits the fee award to work "reasonably performed." Thus, "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services." *Hensley* v. *Eckerhart* (1983), 461 U.S. 424, 433.

In this case, Bittner's attorneys submitted well-documented time reports detailing the amount of time they spent preparing for trial. During the fee award hearing, both sides presented testimony regarding the number of hours worked and their hourly rates of recompense.

In challenging the amount of hours expended on the case, Tri-County alleges that the only issue in this case is whether it failed to give Bittner a receipt for her deposit, which, if proven, would subject it to payment of a $200 damage award. However, for seven months Tri-County denied it had violated any provision of the Act, even denying it had failed to give Bittner a receipt for her deposit. This, of course, required Bittner's attorneys to expend their time and resources to force Tri-County to admit it had violated the law. Importantly, the case was not settled until the morning of trial. The amount of the settlement was $3,500. Certainly, if the only issue to be litigated was whether Tri-County had failed to give Bittner a receipt for her deposit, Tri-County would not have agreed to a $3,500 settlement for a mere $200 technical violation of the Act.

"The product of reasonable hours times a reasonable rate does not end the inquiry. There remain other considerations that may lead the * * * court to adjust the fee upward or downward, including the important factor of 'results obtained.' " *Hensley, supra,* at 434. The consideration of "results obtained," however, is not synonymous with the monetary amount of the recovery. The results-obtained factor encompasses the degree of success enjoyed by the prevailing party. Here, Bittner enjoyed a high degree of success in the settlement of her claim.

Tri-County also alleges that Bittner should not be able to recover for the time spent developing her breach of contract claim, since a breach of contract, standing alone, is not unfair or deceptive under the Act. In this case, the breach of contract claim is distinct from the deposit rule claim. Where, as here, the claims can be separated into a claim for which fees are recoverable and a claim for which no fees are recoverable, the trial court must award fees only for the amount of time spent pursuing the claim for which fees may be awarded. See *Hensley, supra.*

When awarding reasonable attorney fees pursuant to R.C. 1345.09(F)(2), the trial court should first calculate the number of hours reasonably expended on the case times an hourly fee, and then may modify that calculation by application of the factors listed in DR 2-106(B). These factors are: the time and labor involved in maintaining the litigation; the novelty and difficulty of the questions involved; the professional skill required to perform the necessary legal services; the attorney's inability to accept other cases; the fee customarily charged; the amount involved and the results obtained; any necessary time limitations; the nature and length of the attorney/client relationship; the experience, reputation, and ability of the

attorney; and whether the fee is fixed or contingent. All factors may not be applicable in all cases and the trial court has the discretion to determine which factors to apply, and in what manner that application will affect the initial calculation.

Moreover, the trial court determination should not be reversed absent a showing that the court abused its discretion. "It is well settled that where a court is empowered to award attorney fees by statute, the amount of such fees is within the sound discretion of the trial court. Unless the amount of fees determined is so high or so low as to shock the conscience, an appellate court will not interfere. The trial judge which participated not only in the trial but also in many of the preliminary proceedings leading up to the trial has an infinitely better opportunity to determine the value of services rendered by lawyers who have tried a case before him than does an appellate court." *Brooks* v. *Hurst Buick-Pontiac-Olds-GMC, Inc.* (1985), 23 Ohio App. 3d 85, 91, 23 OBR 150, 155, 491 N.E. 2d 345, 351-352.

The trial court judge was in the best position to assess and review the time records submitted by Bittner's attorneys. The trial judge had been involved in the pretrial proceedings and was aware of the posture of both Bittner and Tri-County.

In making the fee award determination, the trial judge did not award either of Bittner's attorneys the fee amount requested. Thus, in making its final determination, the trial court apparently took into consideration other factors. Presumably, sufficient evidence was presented to support the award made by the trial judge. However, it is not possible to determine what factors the court considered or the weight, if any, it placed on those factors. When making a fee award pursuant to R.C. 1345.09(F)(2), the trial court must state the basis for the fee determination. Absent such a statement, it is not possible for an appellate court to conduct a meaningful review.

For the foregoing reasons, we reverse the judgment of the court of appeals and remand the cause to the trial court for disposition consistent with this opinion. The trial court may, in its discretion, apply the tests stated herein to the facts in the record.

*Judgment reversed and cause remanded.*

HOLMES, WRIGHT and H. BROWN, JJ., concur.

SWEENEY, DOUGLAS and RESNICK, JJ., concur in part and dissent in part.

DOUGLAS, J., concurring in part and dissenting in part. I concur in the opinion and judgment of the majority with regard to the awarding of attorney fees pursuant to R.C. 1345.09(F)(2). I respectfully dissent from the majority's remand to the trial court for a statement of the basis for its fee determination. I would reinstate the judgment of the trial court, which obviously followed the law as it has been previously set down.

The majority quotes from *Brooks* v. *Hurst Buick-Pontiac-Olds-GMC, Inc.* (1985), 23 Ohio App. 3d 85, 91, 23 OBR 150, 155, 491 N.E. 2d 345, 351-352, which sets forth the proper standard for determining fees and the proper standard of appellate review of a trial court's judgment in such a case. Certainly the fees awarded by the trial judge in this case are not "* * * so high or so low as to shock the conscience * * *." Therefore, the judgment of the trial court should not be disturbed. That judgment should be reinstated.

SWEENEY and RESNICK, JJ., concur in the foregoing opinion.