OPINION
This is an appeal from the Trumbull County Court of Common Pleas. Appellant, Robert Berry, appeals the trial court's June 8, 1998 judgment entry.
On July 18, 1996, appellant filed a complaint for money damages against appellee, Maaco Auto Painting Bodyworks Center, alleging that appellee performed work on his truck in an unprofessional and unworkmanlike manner, in violation of R.C. 1345.02. Appellee filed its answer claiming that it was not a proper party to the lawsuit. The matter was submitted to compulsory arbitration and an arbitration hearing was held on March 13, 1997. Appellee moved for a motion to dismiss because appellant could not establish ownership of the vehicle, and thus, had no right to any damages to the property. In the "Report and Award of Arbitrator," filed with the court on April 18, 1997, the arbitrator granted appellant's motion to dismiss.
On April 30, 1997, appellant filed a notice of appeal to the arbitrator's award. The matter was referred to a magistrate. Appellant submitted an amended complaint to name the previous owner of appellee's business. Appellee also filed a motion for summary judgment on September 11, 1997, which was overruled. Appellee answered the amended complaint on September 15, 1997. A hearing took place on October 10, 1997 before the magistrate.
At the hearing, appellant testified that around July 18, 1995, after watching a television advertisement for appellee's painting services, he went to appellee's place of business and discussed with the manager, Dan Moadus ("Moadus"), painting services and bodywork for his 1987 Chevy S-10 pickup truck.[1] Appellant received a couple of different quotes on the paint job. He decided to have appellee perform a top-of-the-line paint job on his truck, replace a rust spot on the rocker panel, and do some other repairs for a total cost of $982.31.
When appellant went to pick up the truck, it was not ready and as a result, he stated that he missed about three to four hours of work. Ultimately, appellant's brother, Don Berry ("Don"), picked up the vehicle a few days later. Upon inspection, appellant stated that "there was a cheater panel put in for the rocker panel. When the fender was installed the windshield was cracked and the cowl pin was all scratched up." He claimed that the cheater panel did not even cover up the rust spot. Further, when the fender was replaced, the antenna was not properly attached to the radio and it had to be remounted. Appellant complained about the body panel, the primer on the taillights, and the rubber seals around the windows. Appellant explained that he asked Moadus to have the complaints corrected. However, Moadus did not offer to fix the cracked windshield or do anything to the body except remove the primer on the taillights and the weather stripping. Moadus only suggested returning the money that appellant paid for the paint job and then charging him for a higher paint job, but he did not discuss redoing any of the bodywork.
Appellant obtained a couple of estimates to repair the alleged damage caused by appellee. One appraisal was for $2,926.66, and another one was for $3,441.82. Additionally, appellant obtained a quote of $223.93 to replace the broken windshield. Appellant further indicated that he no longer possessed the vehicle because, on May 21, 1996, he traded it in for $3,000.
The testimony of appellant's brother, Don, revealed that he discovered some problems after he inspected the truck at the shop before he took it home. However, Moadus told Don that if anything were wrong with the truck that he would work it out with appellant. Don signed the invoice, which said, "I have inspected my vehicle and I am satisfied with this shop as completing the services on the repair order referenced above. I have also signed a copy of this invoice and the warranty registration card." Don paid for the repairs and went home. He admitted that while he was at the shop, he was unable to make a thorough inspection because it was raining. When he arrived home, he carefully examined the pickup and felt that appellee did shoddy work. He recalled that he and appellant returned to the shop two days later, but Moadus did not offer to correct any of the work. Don overheard Moadus tell appellant to "go ahead and sue him."
Following Don's testimony, Randall Wean ("Wean"), the expert retained by appellant, indicated that appellant approached him and requested that he do a lab work-up on the vehicle. He believed that the problem with the truck was obvious just from looking at it, although he had never viewed the pickup prior to it being painted by appellee. Wean ran several tests on the vehicle and took a number of photographs of it, which showed that the workmanship was "horrendous." He also suggested that appellant may have lost between $1,500 to $3,000 on the trade-in value of the truck.
Moadus was called to the stand. He related that appellant wanted the best paint job. He revealed that appellee offered a higher quality service, the "Signature Service," than the one he sold appellant. At first, Moadus did not present this option to appellant because he assumed that based on the rough condition of appellant's truck, he would be uninterested in that service as it was substantially more expensive and it was not commonly sold. When appellant complained about the paint job, Moadus told him he would refund his money on the paint job and sell him the "Signature Service." Moadus mentioned that he did notice a crack in the windshield, but stated that he told appellant, "[t]here's nothing that [they] would have done in the process of painting or repairing the vehicle that would have caused [the crack]." Appellant told Moadus that he thought the windshield chipped when appellee pried off the cowl panel. For that reason, Moadus allowed appellant to watch the procedure involved in removing the cowl panel to see if that is when the windshield cracked. According to Moadus, after appellant observed the operation, he indicated that the windshield was not chipped during the process. Moadus also admitted that the vehicle was not returned promptly, but no complaints were ever received as a result.
Moreover, Moadus initially denied fault when appellant complained about the cowl panel, but after he spoke with his mechanic, who mentioned that he might have caused the scratches, Moadus called appellant and told him he would repair the cowl panel at no charge. Moadus recalled no complaints regarding the rocker panel. He said he inspected the vehicle after the work was completed and did not feel that the job was poorly done. He further asserted that the pictures Wean took did not depict the condition of the truck when it left the shop. Moadus gave appellant a two-year warranty on the paint service rendered and a ninety-day warranty on the bodywork, yet no claim for warranties was ever made.[2]
At the end of all of the testimony, appellee's attorney objected to several of the exhibits. The trial court overruled the objections. Thereafter, appellee's attorney moved for a dismissal, which was overruled.
On May 12, 1998, the magistrate awarded appellant damages against appellee in the amount of $979.98 because of the unworkmanlike paint services that were rendered. Appellant filed objections to that decision on May 26, 1998. On June 9, 1998, the trial court overruled appellant's objections and adopted the magistrate's decision. Appellant timely filed a notice of appeal and now asserts the following as error:
 "[1.] The lower [c]ourt erred as a matter of law in ruling that an `intent to deceive' must be shown to receive an [a]ward of attorney fees.
 "[2.] The lower [c]ourt committed reversible error as a matter of law in failing to find multiple violations of the [Ohio Consumer Sales Practice Act].
 "[3.] The lower [c]ourt erred as a matter of law where it found `no grounds for granting declaratory or injunctive relief as it appears to have involved an isolated incident.[']
 "[4.] The lower [c]ourt erred in its computation of actual and treble damages to the prejudice of [a]ppellant.
 "[5.] The lower [c]ourt erred in failing to take Judicial Notice of the disparity in the sworn testimony of Dan Moadus between that at the Arbitration Hearing and Trial."
In his first assignment of error, appellant contends that the trial court abused its discretion in not awarding him attorney fees. R.C.1345.09(F) states:
 "The court may award to the prevailing party a reasonable attorney's fee limited to the work reasonably performed, if either of the following apply:
"* * *
 "(2) The supplier has knowingly committed an act or practice that violates this chapter."
The statute's very language "may award" implies that the award is discretionary. Bittnerv. Tri-Cty. Toyota (1991), 58 Ohio St.3d 143, 145-146;Einhorn v. Ford Motor Co. (1990), 48 Ohio St.3d 27, 29. Consequently, an appellate court will not disturb the judgment of a trial court absent an abuse of discretion. See Griffey v. Rajan (1987), 33 Ohio St.3d 75, 77. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable." Statev. Adams (1980), 62 Ohio St.2d 151, 157.
In the instant matter, the record reveals that, in denying attorney fees, the trial court reasoned that "while Moadus made representations which created a false impression in [appellant] as to the grade or quality of the * * * paint service, the evidence [was] insufficient to support a finding that Moadus made these representations with an intent to deceive." Appellant argues that the trial court erred in determining that the language, "knowingly committ[ing] an act," as required by R.C. 1345.09(F)(2), means the same as the language used by the magistrate that "a supplier intended to commit a deceptive act or practice." This argument is not well-founded.
The Supreme Court of Ohio has stated, "a trial court may award a consumer reasonable attorney fees when the supplier in a consumer transaction intentionally committed an act or practice which is deceptive, unfair or unconscionable." Einhorn, 48 Ohio St. 3d at syllabus; see, also, Keiber v. Spicer Constr. Co. (May 28, 1999), Greene App. Nos. 98CA23, 98CA30, unreported, at 5, 1999 WL 355140. Thus, the Supreme Court has construed the language "knowingly committ[ing] an act" to include the intent to commit a deceptive act. Hence, we conclude that the trial court's rationale for denying appellant's request for attorney fees was not unreasonable, arbitrary, or unconscionable. Appellant's first assignment of error lacks merit.
In his second assignment of error, appellant argues that the trial court committed reversible error in failing to find that appellee committed multiple violations of the Ohio Consumer Sales Practice Act. Specifically, appellant points out that after his truck was returned from appellee, the windshield was cracked, the rocker panel was not of the proper quality, and the value of the truck was diminished. Appellant also was not able to address the problem with anyone with authority besides Moadus. Further, he did not receive the vehicle on the date promised.
Appellant averred several separate violations of the Ohio Consumer Sales Practice Act. The magistrate found that appellee misrepresented the grade and quality of the paint service and that this conduct constituted an unfair and deceptive act. The magistrate ruled that: (1) the decision to use the cheater panel did not constitute an unfair or deceptive act; (2) appellant did not provide any evidence that an "after-market fender" was used; (3) appellant did not show how the failure to have the vehicle ready on time was a deceptive act; (4) the estimate form used by appellee complied with the Ohio Administrative Code and was properly used; (5) Moadus' failure to allow appellant to speak with the owner of the franchise had no adverse affect on appellant, and was not deceptive; and (6) appellant failed to establish by a preponderance of the evidence that appellee cracked the windshield.
Based on the record before the magistrate, the trial court did not abuse its discretion in adopting the foregoing findings of the magistrate because they sufficiently set forth the reasons for the magistrate's conclusion from his analysis of the evidence before him on these points. Therefore, appellant's second assignment of error is not well-taken.
In his third assignment of error, appellant asserts that the trial court erred in finding no grounds for granting injunctive relief. R.C. 1345.09(D) provides that "[a]ny consumer may seek a declaratory judgment, an injunction, or other appropriate relief against an act or practice that violates this chapter." Appellant did not specifically warrant what conduct of appellee's he wanted enjoined. He merely stated that the trial court erred when it concluded that there were no grounds for granting either declaratory or injunctive relief. We note that injunctive relief is not required. The language "may seek" implies that it is discretionary. See Bittner, 58 Ohio St.3d at 145-146. It is our determination that the trial court did not err when it ruled that there were no grounds for injunctive relief. Appellant's third assignment of error is without merit.
In his fourth assignment of error, appellant maintains that the trial court erred to the prejudice of appellant in its calculation of actual and treble damages. In order for treble damages to be awarded, there must be:
 "* * * [a] violation [of] an act or practice declared to be deceptive or unconscionable by rule * * *, or an act or practice determined by a court of this state to violate section 1345.02 or 1345.03 of the Revised Code and committed after the decision containing the determination has been made available for public inspection * * *." R.C. 1345.09(B).
Further, R.C. 1345.09(B) provides that where a supplier commits an act declared to be deceptive or unconscionable by a decision or rule that has been made available for public inspection, the consumer may recover three times the amount of his actual damages. The magistrate determined that appellee committed two acts, as to the paint service, that were deceptive or unconscionable, and therefore, awarded appellant $979.98. The magistrate reasoned that $326.66 of the price appellant paid, $982.31, was attributable to the cost of the paint job. Accordingly, the court awarded appellant three times the amount of what it determined to be his actual damages as a result of the deceptive acts.
Additionally appellant argues that his lost wages and the cost of retaining his expert should have been taken into consideration. Although appellant testified that he missed about three to four hours of work as a result of his vehicle not being ready on time, he did not present any evidence as to what his hourly wages were, thereby making it difficult for the trial court to calculate lost wages. Moreover, expert fees are not taxable as costs. Sadowskiv. Monteleone (1990), 69 Ohio App.3d 815, 816. Accordingly, we cannot assume that the trial court abused its discretion in not taking these factors into consideration. Appellant's fourth assignment of error is overruled.
In his fifth assignment of error, appellant claims that the trial court erred in failing to take judicial notice of the disparity in the sworn testimony of Moadus at the arbitration hearing and the trial. It is well-settled law that the weight to be afforded the evidence and credibility of witnesses are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230,231. Appellant failed to provide this court with Moadus' testimony from the arbitration proceeding. In addition, appellant admits that he did not present the discrepancies in Moadus' sworn statement and his testimony at trial. Furthermore, we note that this request is not a proper one for judicial notice. Evid.R. 201. Judicial notice may be taken of any fact that is not in dispute and that is capable of ready determination by resort to certain sources. Evid.R. 201(B). Since appellant never objected to the procedure followed by the trial court, he waived the right to challenge the taking of judicial notice. See StoresRealty Co. v. Cleveland Bd. of Bldg. Standards and Bldg. Appeals
(1975), 41 Ohio St.2d, 41, 43.
In the instant matter, there may have been evidence that could have been used for impeachment purposes that was not properly presented. Hence, appellant has not appropriately demonstrated this error. Appellant's fifth assignment of error is not well-founded.
For the foregoing reasons, appellant's assignments of error are not well-taken. The judgment of the Trumbull County Court of Common Pleas is affirmed.
 __________________________________________ PRESIDING JUDGE DONALD R. FORD
CHRISTLEY, J., O'NEILL, J., concur.
[1] Appellant testified that he owned the vehicle when he took it to appellee.
[2] Appellant testified that he did not receive a warranty card.