[Cite as *Gale v. Pattie Group, Inc.*, 2016-Ohio-5233.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
Nos.   103336 and 103368

## BRIAN GALE, ET AL.

PLAINTIFFS-APPELLANTS/
CROSS-APPELLEES

vs.

## PATTIE GROUP, INC.

DEFENDANT-APPELLEE/
CROSS-APPELLANT

## JUDGMENT:
AFFIRMED IN PART, REVERSED IN PART,
AND REMANDED

Civil Appeals from the
Cuyahoga County Court of Common Pleas
Case No. CV-14-824827

**BEFORE:**    Boyle, J., Jones, A.J., and Kilbane, J.

**RELEASED AND JOURNALIZED:**    August 4, 2016

**ATTORNEY FOR APPELLANTS/CROSS-APPELLEES**

David Lavey
8748 Brecksville Road
Suite 218
Brecksville, Ohio    44141


**ATTORNEY FOR APPELLEE/CROSS-APPELLANT**

Kimberlee J. Kmetz
Kmetz Law, L.L.C.
3855 Starr Centre Drive
Suite A
Canfield, Ohio    44406

David M. King
Schraff & King Co., L.P.A.
2802 S.O.M. Center Road
Suite 200
Willoughby, Ohio    44094

MARY J. BOYLE, J.:

**{¶1}** In this consolidated appeal, Brian and Kelly Gale (collectively the "Gales") appeal the trial court's judgment denying their motion for attorney fees and statutory damages under R.C. 1345.09(B) and (F) after a jury found in their favor on two of their claims against a landscaping company, Pattie Group, Inc. ("Pattie Group"). They raise two assignments of error for our review:

> 1. The trial court erred when it denied [the Gales'] motion for attorney fees under R.C. 1345.09(F) without conducting a hearing, indeed, before [the Gales'] even filed their brief setting forth the law and facts.
>
> 2. The trial court erred when it failed to award [the Gales] damages mandated by R.C. 1345.09(B) without conducting a hearing, indeed, before [the Gales] even filed their brief setting forth the law and facts.

**{¶2}** Pattie Group appeals the trial court's judgment denying its motion for judgment notwithstanding the verdict. It raises one assignment of error for our review:

> The trial court erred in denying [Pattie Group's] motion for judgment notwithstanding the verdict on all claims brought by [the Gales] or on the claims of invalid lien in violation of the Consumer Sales Practices Act because [the Gales] lacked standing to bring those claims since they were not the owners of real property at issue.

**{¶3}** After review, we find merit to the Gales' second assignment of error, and agree that the trial court should have awarded them $200 in statutory damages under R.C. 1345.09(B). We find no merit, however, to the Gales' argument regarding attorney fees or to Pattie Group's argument that the Gales lacked standing. Therefore, we affirm in part and reverse in part.

## I.   Procedural History and Factual Background

**{¶4}** In April 2013, the Gales contracted Pattie Group to construct an outdoor fireplace on their patio, to make certain repairs to their patio and their outdoor pond, and for "grading, lawn installation, drainage, irrigation, and landscaping."

**{¶5}** In September 2013, Pattie Group filed a mechanic's lien against the Gales' home in the amount of $15,103.

**{¶6}** In April 2014, the Gales filed a complaint against Pattie Group for breach of contract, slander of title, quiet title (requesting an invalid lien be removed and money damages), and violations of the Consumer Sales Practices Act ("CSPA") for filing the invalid lien. The Gales alleged that Pattie Group failed to complete all of the work under the contract, and that the work Pattie Group did complete was faulty and not completed on time. The Gales further alleged that the mechanic's lien was fraudulent because they did not owe Pattie Group the amount of the lien, and because the lien was untimely.

**{¶7}** Pattie Group answered the Gales' complaint and filed several counterclaims, including breach of contract and unjust enrichment, asserting that it performed all work under the contract and that the Gales failed to pay Pattie Group what they owed under the contract. Pattie Group further sought a declaratory judgment that the lien was valid.

**{¶8}** After a week-long trial, the jury found in favor of the Gales on their invalid lien claim and their claim alleging that Pattie Group violated the CSPA for filing an invalid mechanic's lien. The jury found in favor of Pattie Group on the Gales' breach of

contract and slander of title claims, and found in favor of Pattie Group on its breach of contract claim.

{¶9} The jury did not award the Gales any damages on their claims. The jury awarded Pattie Group $300 on its breach of contract claim.

{¶10} On April 23, 2015 (one day after the trial ended), the Gales filed a motion for "attorney fees and other costs and damages awardable under the Ohio [CSPA] based upon the jury's verdict finding in favor of the plaintiffs on their CSPA claim." In their motion, the Gales requested a hearing "at which they [would] present their evidence of fees and costs." They further explained that they would fully brief the court with "appropriate legal and evidentiary citations * * * after final billings on [the] case [had] been prepared and received."

{¶11} The trial court journalized the jury's verdict four days later, on April 27, 2015. The trial court included the following order in its judgment: "Each party to bear their own costs and attorney fees. Court cost assessed as each their own."

{¶12} On April 30, 2015, the Gales filed their "brief in support of motion for fees, costs, and other relief." The Gales requested attorney fees in the amount of $17,280, as well as other litigation costs amounting to approximately $1,000. The Gales further sought statutory damages under the CSPA, asserting that they were entitled to $200 in mandatory statutory damages for proving that Pattie Group knowingly filed an invalid lien under the CSPA. The Gales requested an evidentiary hearing, or in the alternative,

stated that they would produce a brief with such evidence if the court preferred to hear the matter on the briefs.

{¶13} On May 15, 2015, Pattie Group moved for judgment notwithstanding the verdict, asserting that the Gales lacked standing to bring the suit against Pattie Group because the Kelly M. Gale Trust owned the property, not the Gales. The trial court denied Pattie Group's motion on July 6, 2015.

{¶14} On August 5, 2015, the trial court issued a judgment, upon the Gales' request, for the clerk of courts to memorialize the jury's verdict that the lien was invalid. In the judgment, the trial court restated verbatim what it had journalized on April 27, 2015, and ordered that the Gales' request to memorialize the jury's verdict was moot. It then added the following language relevant to the Gales' request for attorney fees:

> Prior to entry of judgment, plaintiffs requested an award of their fees and costs. Their request was denied by entry of judgment as inconsistent with the jury's express determination, made at plaintiffs' direction, that plaintiffs were not entitled to attorneys' fees. After entry of judgment, defendant sought judgment notwithstanding the verdict, which was similarly denied.

{¶15} The Gales filed a notice of appeal on August 5, 2015 (appealing the trial court's April 27, 2015, and August 5, 2015 judgments). Pattie Group appealed the trial court's judgment denying its motion notwithstanding the judgment. This court subsequently remanded the case for clarification of the trial court's judgments.

{¶16} On remand, the trial court issued the following judgment:

> Order of clarification: As reflected in the docket, plaintiffs filed a motion for attorney fees on April 23, 2015. The court, having conducted all of the proceedings including settlement negotiations, having heard all of the evidence at trial, and having reviewed the motion received via electronic

filing on April 23, 2015, entered judgment on April 27, 2015 consistent with the jury's finding that plaintiffs were not entitled to recover their attorney's fees.

## II.    Standing to Sue

{¶17} In its sole assignment of error, Pattie Group argues that the Gales lacked standing to bring the lawsuit against it because the Gales did not own the property on which the lien was attached.   Pattie Group contends that because the Kelly M. Gale Trust owned the property, the trust had standing.   We will address this issue first because if Pattie Group's argument has merit, then the trial court would have erred when it denied Pattie Group's motion for judgment notwithstanding the verdict.   But after review, we find no error on the part of the trial court.

{¶18} Civ.R. 50 sets forth the standard for granting a motion for a directed verdict:

When a motion for directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue.

{¶19} The standard of review for a motion for judgment notwithstanding the verdict is the same as that for a directed verdict.   *Chem. Bank of N.Y. v. Neman*, 52 Ohio St.3d 204, 207, 556 N.E.2d 490 (1990).   A motion for directed verdict or judgment notwithstanding the verdict presents questions of law, not factual issues; thus, we employ a de novo standard of review.   *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm*, 73 Ohio St.3d 107, 108, 652 N.E.2d 684 (1995).   Our test is whether the evidence, construed most strongly in favor of the nonmoving party, is legally sufficient to sustain

the verdict. *Environmental Network Corp. v. Goodman Weiss Miller, L.L.P.*, 119 Ohio St.3d 209, 2008-Ohio-3833, 893 N.E.2d 173, ¶ 23. Where substantial evidence is presented such that reasonable minds could come to differing conclusions, the court should deny the motion. *Posin v. A.B.C. Motor Court Hotel, Inc.*, 45 Ohio St.2d 271, 275, 344 N.E.2d 334 (1976). Thus, we must determine if reasonable minds could come to differing conclusions as to whether the Gales had standing.

{¶20} In *Fed. Home Loan Mtge. Corp. v. Schwartzwald*, 134 Ohio St.3d 13, 2012-Ohio-5017, 979 N.E.2d 1214, the Ohio Supreme Court made it clear that a party must have standing at the commencement of the suit to invoke the jurisdiction of the common pleas court. *Id.* at ¶ 20-28.

{¶21} The Ohio Constitution provides in Article IV, Section 4(B): "The courts of common pleas and divisions thereof shall have such original jurisdiction *over all justiciable matters* and such powers of review of proceedings of administrative officers and agencies as may be provided by law." (Emphasis added.)

> Whether a party has a sufficient stake in an otherwise justiciable controversy to obtain judicial resolution of that controversy is what has traditionally been referred to as the question of standing to sue. Where the party does not rely on any specific statute authorizing invocation of the judicial process, the question of standing depends on whether the party has alleged * * * a "personal stake in the outcome of the controversy."

*Schwartzwald* at ¶ 21, quoting *Cleveland v. Shaker Hts.*, 30 Ohio St.3d 49, 51, 507 N.E.2d 323 (1987).

{¶22} The Supreme Court further explained:

"It is an elementary concept of law that a party lacks standing *to invoke the jurisdiction* of the court unless he has, in an individual or representative capacity, some real interest in the subject matter of the action." (Emphasis [sic.]) *See also New Boston Coke Corp. v. Tyler*, 32 Ohio St.3d 216, 218, 513 N.E.2d 302 (1987) ("the issue of standing, inasmuch as it is jurisdictional in nature, may be raised at any time during the pendency of the proceedings"); Steinglass & Scarselli, The Ohio State Constitution: A Reference Guide 180 (2004) (noting that the jurisdiction of the common pleas court is limited to justiciable matters).

*Schwartzwald* at ¶ 22, quoting *State ex rel. Dallman v. Franklin Cty. Court of Common Pleas*, 35 Ohio St.2d 176, 179, 298 N.E.2d 515 (1973).

**{¶23}** Pattie Group's sole argument on appeal is that because the Gales did not own the property (i.e., they were not the titled owners), they did not have standing to bring the suit against Pattie Group "as a result of [an] alleged improper lien, or any other claim of damage to that property." Pattie Group maintains that only the Kelly M. Gale Trust had standing. We disagree.

**{¶24}** In this case, the Gales entered into a contract for landscaping services with Pattie Group whereby the Gales agreed to pay Pattie Group a sum of money for improvements made to the land surrounding the Gales' residence (whether they owned the property or not, it was their home). Likewise, Pattie Group entered into a contract with the Gales, not with the Kelly M. Gale Trust, agreeing to improve the land surrounding the Gales' residence for a sum of money. Notably, Pattie Group does not contend that the contract was invalid. When Pattie Group did not complete the job to the Gales' liking and then filed the lien against the property, the Gales brought the present action for breach of contract (and the other claims). The Gales, as parties to the

contract, had a personal stake in the outcome of the controversy at the commencement of the suit (it is irrelevant that the jury did not find in their favor on this claim).

{¶25} The Gales also had standing to bring their remaining claims regarding the mechanic's lien (slander of title, removal of invalid lien, and violations of the CSPA based on the invalid lien) because the lien was directly related to the contract between Pattie Group and the Gales. The lien specifically stated that "the lien claimant [Pattie Group] furnished certain material or performed certain labor or work in furtherance of improvements * * * pursuant to a certain contract with Brian D. Gale and Kelly M. Gale[.]"

{¶26} Under R.C. Chapter 1311, setting forth the law on mechanic's liens, the lien attaches to the contract, not the titled owner. *See Romito Bros. Elec. Constr. Co. v. Frank A. Flannery, Inc.*, 40 Ohio St.2d 79, 320 N.E.2d 294 (1974) (before one who furnishes labor or material may enforce a mechanic's lien, he or she must show that such work was performed pursuant to a contract because the lien applies only to the interest of the one with whom the contract was made); *see also Summer & Co. v. DCR Corp.*, 47 Ohio St.2d 254, 351 N.E.2d 485 (1976) ("[T]he contractor's mechanic's lien extends only to the leasehold interest of the party who ordered the work done.").

{¶27} In support of its argument that the Gales lacked standing because they were not the titled owners, Pattie Group only cites to two cases: *Lame v. E.G. Sys. Inc.*, 8th Dist. Cuyahoga No. 101566, 2015-Ohio-686, and *Adams v. Pitorak & Coenen Invests., Ltd.*, 11th Dist. Geauga No. 2011-G-3019, 2012-Ohio-3015. In both of these cases, the

plaintiffs sued an entity or entities who the plaintiffs alleged damaged their property, but it was later discovered that the plaintiffs were not the titled owners of the property and, thus, lacked standing. *See Lame* (plaintiff sued a landscaping company for trespassing on land that plaintiff did not own); *Adams* (plaintiff sued a developer and excavating company developing a neighboring uphill subdivision for loss of enjoyment of land, trespass, nuisance, and interference with surface water regarding land that plaintiff did not own). But notably, in *Lame* and *Adams*, unlike the present case, the plaintiffs had not contracted with the entities they sued. Thus, *Lame* and *Adams* are distinguishable and not applicable in this case.

{¶28} Accordingly, Pattie Group's sole assignment of error is overruled.

## III. Attorney Fees

{¶29} In their first assignment of error, the Gales argue that the trial court abused its discretion by denying their motion for attorney fees pursuant to R.C. 1345.09(F). The Gales contend that the trial court denied their motion for attorney fees before it even read their brief in support of their motion. They further maintain that the trial court erroneously applied the wrong legal standard because it relied on the jury's answer to an interrogatory rather than conducting its own analysis as to whether they were entitled to attorney fees.

{¶30} This court's standard of review of a trial court's determination regarding the award of attorney fees is abuse of discretion. *Einhorn v. Ford Motor Co.*, 48 Ohio St.3d 27, 29, 548 N.E.2d 933 (1990). "Abuse of discretion" has been defined as an attitude

that is unreasonable, arbitrary, or unconscionable. *In re C.K.*, 2d Dist. Montgomery No. 25728, 2013-Ohio-4513, ¶ 13, citing *Huffman v. Hair Surgeon, Inc.*, 19 Ohio St.3d 83, 482 N.E.2d 1248 (1985).

{¶31} R.C. 1345.09(F) provides for the award of attorney fees to the prevailing party in an action brought under Ohio's CSPA. This provision states in relevant part that "[t]he court may award to the prevailing party a reasonable attorney's fee limited to the work reasonably performed, if * * * [t]he supplier has knowingly committed an act or practice that violates this chapter."

{¶32} Thus, if a supplier knowingly commits an act that violates the CSPA, a trial court has the discretion to award reasonable attorney fees to a party who prevails in a suit against the supplier. *Warren v. Denes Concrete, Inc.*, 9th Dist. Lorain No. 10CA009877, 2011-Ohio-2988, ¶ 7, citing R.C. 1345.09(F)(2). But the Ohio Supreme Court has reiterated that "R.C. Chapter 1345 does not *mandate* imposition of attorney fees. The trial court has the discretion to determine whether attorney fees are warranted under the facts of each case." (Emphasis added.) *Charvat v. Ryan*, 116 Ohio St.3d 394, 2007-Ohio-6833, 879 N.E.2d 765, ¶ 27.

{¶33} In determining whether to award attorney fees under R.C. 1345.09(F), the Ohio Supreme Court held:

> When awarding reasonable attorney fees pursuant to R.C. 1345.09(F)(2), the trial court should first calculate the number of hours reasonably expended on the case times an hourly fee, and then may modify that calculation by application of the factors listed in DR 2-106(B). These factors are: the time and labor involved in maintaining the litigation; the novelty and difficulty of the questions involved; the professional skill

required to perform the necessary legal services; the attorney's inability to accept other cases; the fee customarily charged; the amount involved and the results obtained; any necessary time limitations; the nature and length of the attorney/client relationship; the experience, reputation, and ability of the attorney; and whether the fee is fixed or contingent. All factors may not be applicable in all cases and the trial court has the discretion to determine which factors apply, and in what manner that application will affect the initial calculation.

*Bittner v. Tri-County Toyota, Inc.*, 58 Ohio St.3d 143, 146, 569 N.E.2d 464 (1991).

**{¶34}** In *Bittner*, the prevailing party on the CSPA claim requested attorney fees in the amount that was billed to her. The trial court held an evidentiary hearing, where the prevailing party presented evidence of the amount of attorney fees that she had incurred, which amounted to $12,711.54. After the hearing, the trial court awarded the defendant $10,000 without stating its reasons. The Ohio Supreme Court reversed because the trial court failed to state its basis for not awarding the prevailing party what she had requested and "had apparently [taken] into consideration other factors." *Id.* The Supreme Court noted that "[p]resumably, sufficient evidence was presented to support the award made by the trial judge," but that because the trial court did not state its basis for such an award, it was "not possible to determine what factors the court considered or the weight, if any, it placed on those factors." *Id.* at 146. Thus, the Supreme Court held: "When making a fee award pursuant to R.C. 1345.09(F)(2), the trial court must state the basis for the fee determination. Absent such a statement, it is not possible for an appellate court to conduct a meaningful review." *Id.*

**{¶35}** In this case, the trial court issued three judgments (on April 27, 2015, August 5, 2015, and September 29, 2015, on remand from this court). In the first

judgment, the trial court denied the Gales' motion for attorney fees three days before they filed their brief in support of their motion — despite the fact that the Gales informed the court that it would be submitting an evidentiary brief and despite the fact that the Gales had requested an evidentiary hearing. The trial court included the following order in its judgment: "Each party to bear their own costs and attorney fees. Court cost assessed as each their own."

{¶36} On August 5, 2015, the trial court issued a judgment, upon the Gales' request, for the clerk of courts to memorialize the jury's verdict that the lien was invalid. In the judgment, the trial court restated verbatim what it had journalized on April 27, 2015, and further stated that the Gales' request to memorialize the jury's verdict was moot. It then added the following language relevant to the Gales' request for attorney fees:

Prior to entry of judgment, plaintiffs requested an award of their fees and costs. Their request was denied by entry of judgment as inconsistent with the jury's express determination, made at plaintiffs' direction, that plaintiffs were not entitled to attorneys' fees. After entry of judgment, defendant sought judgment notwithstanding the verdict, which was similarly denied.

{¶37} Upon remand from this court, the trial court issued the following judgment:

Order of Clarification: As reflected in the docket, plaintiffs filed a motion for attorney's fees on 4/23/2015. The court, having conducted all of the proceedings including settlement negotiations, having heard all of the evidence at trial, and having reviewed the motion received via electronic filing on 4/23/2015, entered judgment on 4/27/2015 consistent with the jury's finding that plaintiffs were not entitled to recover their attorney's fees.

**{¶38}** In both of its later judgments, the trial court stated that denying the Gales' motion for attorney fees was consistent with the jury's finding that the Gales were not entitled to recover their attorney fees and costs.

**{¶39}** After review, we agree with the Gales that the trial court incorrectly relied on the jury's answer to the interrogatory — that the Gales were not entitled to an award of attorney fees — to deny the Gales' motion for attorney fees and costs. As we explain below, the jury interrogatory stating that the Gales were not entitled to attorney fees went to their slander of title claim, not their CSPA claim.

**{¶40}** Before the case went to the jury for deliberation, the trial court and the parties reviewed the jury interrogatories and instructions. When discussing the jury interrogatories involving the Gales' slander of title claim, the trial court said that interrogatory No. 6 stated:

> Did Pattie Group slander the title of the Gales' property by filing a lien? Yes or No? Did Pattie Group act in bad faith when it filed the lien? Yes or No? If the answer to interrogatory no. 6 is yes, what amount of damages, excluding attorney fees and litigation costs do you award to Gales in compensation for Pattie Group's slander of title?

**{¶41}** The Gales' counsel interrupted the court at that point and said, "Right there, your Honor, I propose adding a new interrogatory that says, are the Gales entitled to recover their attorney fees? Yes, No." Subsequent to that discussion, the court and the parties discussed the remaining interrogatories, which involved the Gales' CSPA claim.

**{¶42}** The jury instructions regarding the Gales' slander of title claim further support the fact that the interrogatory asking the jury if the Gales were entitled to attorney

fees went to that claim, and not the Gales' CSPA claim. The jury instructions explained the law on slander of title, and then stated:

> To prevail on their claim for slander of title, the Gales must prove by a preponderance of the evidence that they suffered damages as a result of the filing of the lien. In a slander of title case involving a lien, the plaintiffs may recover as damages: (A) the pecuniary loss that results directly and immediately from the false defamation of their title to the property resulting from the filing of the lien, and (B) the expense of measures reasonably necessary to remove the lien. The damages claimed by the Gales include the attorney fees and litigation costs incurred by the Gales in having the lien removed. If you find in favor of the Gales on the slander of title claim, and determine that they are entitled to recover these fees and costs, the court, not you, will determine the amount of such damages.

> At this post-trial hearing, the plaintiffs may be permitted to recover certain additional attorney fees and litigation costs if you find in plaintiffs' favor on the slander of title claim, and if you determine that plaintiffs have proven by a preponderance of the evidence that the defendant filed the lien in bad faith. An act is made in bad faith if it is done with a wrongful or dishonest purpose or with a motive of self-interest.

{¶43} The jury answered "yes" that Pattie Group filed the lien in bad faith and "no" that the Gales were not entitled to an award of attorney fees. But because they did not find for the Gales on the slander of title claim, they did not have to answer these two interrogatories. It would have been more clear if the interrogatories had prefaced the questions with, "If the answer to Interrogatory No. 6 is 'YES'" — that Pattie Group slandered the title of the Gales' property by filing the lien — and then posed the question. It is likely that the jury answered that the Gales were not entitled to an award of attorney fees because the jury did not find in the Gales' favor on the slander of title claim.

**{¶44}** Reviewing the jury interrogatories and instructions regarding the Gales' CSPA claim further support the fact that the interrogatory to the jury regarding whether the Gales were entitled to attorney fees went to the slander of title claim, and not the CSPA claim. Interrogatory No. 10 states, "Did Pattie Group violate the Consumer Sales Practices Act?" Interrogatory No. 11 states, "If the answer to Interrogatory No. 10 is 'YES,' did Pattie Group knowingly commit the act(s) that violated the Consumer Sales Practices Act?" Interrogatory No. 12 states, "If the answer to Interrogatory No. 10 is 'YES,' what amount of economic damages do you award to the Gales as compensation for defendant's violation of the Consumer Sales Practices Act claims?" Interrogatory No. 13 states, "If the answer to Interrogatory No. 10 is 'YES,' what amount of non-economic damages do you award to the Gales as compensation for defendant's violation of the Consumer Sales Practices Act claims?"

**{¶45}** The jury instructions regarding the Gales' CSPA set forth the law on violations of consumer sales practices, and then set forth the instructions on economic and noneconomic damages under the CSPA. Regarding attorney fees, the jury instructions state:

> Additional damages, including attorney fees, may be awarded by the court after the trial. You will not be asked to determine the amount of these damages. However, to aid the court in its determination, you will be asked whether you find, by a preponderance of the evidence, that the defendants knowingly committed an act that violates the [CSPA]. A defendant knowingly commits an act that violates the [CSPA] when it knowingly commits an act that constitutes the violation. The defendant does not have to know that the act is a violation of the law.

{¶46} The instructions make clear that it would be the court that would determine if the Gales were entitled to attorney fees, not the jury. Thus, the trial court abused its discretion when it incorrectly relied on the jury's answer to the interrogatory asking whether the Gales were entitled to an award of attorney fees because that interrogatory went to the Gales' slander of title claim. The jury's answer stating that the Gales were not entitled to an award of attorney fees had nothing to do with the Gales' CSPA claim.

{¶47} Moreover, it is not clear from the trial court's judgment what factors it considered under *Bittner,* 58 Ohio St.3d 143, 569 N.E.2d 464*,* when it denied the Gales' motion. We further agree with the Gales that the trial court should hold an evidentiary hearing to determine whether the Gales are entitled to attorney fees. That does not mean, however, that the trial court is mandated to award the Gales attorney fees after hearing the evidence. Further, if the trial court determines — in its discretion — that the Gales are entitled to attorney fees, they would only be entitled to such fees that relate directly to their CSPA claim. *Id*. at 145.

{¶48} Accordingly, the Gales' first assignment of error is sustained.

## IV. Statutory Damages

{¶49} In their second assignment of error, the Gales maintain that the trial court erred by failing to award it "the statutory damages mandated under" R.C. 1345.09(B).

{¶50} Here, the jury found that Pattie Group violated the CSPA by knowingly filing an invalid lien against the Gales' home. R.C. 1345.09(B) provides in relevant part that when there is a deceptive violation of the CSPA, consumers may rescind the

transaction or "recover three times the amount of the consumer's actual economic damages or two hundred dollars, whichever is greater, plus an amount not exceeding five thousand dollars in noneconomic damages[.]" Thus, R.C. 1345.09 sets a statutory minimum damage award for successful claims of $200.

{¶51} Here, there were no "actual economic damages" because the jury awarded the Gales $0 in economic damages. Therefore, the court should have awarded the Gales the minimum statutory award of $200.

{¶52} The Gales' second assignment of error is sustained.

{¶53} Judgment affirmed in part and reversed in part. Judgment denying Pattie Group's motion for judgment notwithstanding the verdict is affirmed. Judgment denying the Gales' motion for attorney fees and statutory damages is reversed. The case is remanded with instructions for the trial court to award the Gales $200 in statutory damages under R.C. 1345.09(B) and to hold an evidentiary hearing on the Gales' request for attorney fees under R.C. 1345.09(F).

It is ordered that appellee and appellants share costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY J. BOYLE, JUDGE

LARRY A. JONES, SR., A.J., and
MARY EILEEN KILBANE, J., CONCUR