[Cite as *PHH Mtge. Corp. v. Messersmith*, 2019-Ohio-594.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| PHH MORTGAGE CORPORATION FKA CENDANT MORTGAGE CORPORATION DBA COLDWELL BANK MORTGAGE CORPORATION, | : | CASE NO. CA2018-05-057 |
| | : | |
| Appellee, | : | O P I N I O N 2/19/2019 |
| - vs - | : | |
| MELISSA A. MESSERSMITH, et al., | : | |
| Appellants. | : | |
| | : | |

CIVIL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No.15CV87913

Amy Schott Ferguson, 10655 Springfield Pike, Cincinnati, Ohio 45215, for appellee, Bay Point at Kings Mill Homeowner's Association, Inc.

Paul Croushore, P.O. Box 75170, Cincinnati, Ohio 45275, for appellant, Melissa A. Messersmith

**HENDRICKSON, P.J.**

{¶ 1} Appellant, Melissa A. Messersmith, appeals from a decision of the Warren County Court of Common Pleas granting summary judgment to appellee, Bay Pointe at Kings Mill Homeowners' Association, Inc. (hereafter "the Association" or "HOA"), and ordering her to pay the Association's attorney fees in an action brought to recover unpaid assessments

and to foreclose on a lien filed for the unpaid assessments. For the reasons set forth below, we reverse the trial court's judgment only as it relates to the award of attorney fees and remand the matter for further proceedings.

{¶ 2} Messersmith is the owner of a condominium unit within the Bay Pointe Development of Kings Mill in Warren County, Ohio. Bay Pointe is subject to a Declaration of Covenants, Conditions, and Restrictions (hereafter, "Declaration"), which was recorded in the Warren County Recorder's Office. The Declaration requires all owners of units in Bay Pointe pay assessments to the Association and provides for the imposition of late fees if assessments are not paid when due.

{¶ 3} In December 2013, there was a fire in one of the units at Bay Pointe. The fire originated in the condominium of Michael Ramminger, whose unit adjoined Messersmith's unit. The fire resulted in Ramminger's death and property damage to Messersmith's unit.

{¶ 4} After the fire and through March 2, 2015, the assessments Messersmith owed the Association were paid by insurance. The Association waived Messersmith's late fees for these assessments. As of March 2, 2015, Messersmith had a credit on her assessment account in the amount of $11.00. Messersmith did not pay any assessments to the Association after March 2, 2015, claiming that she was "escrowing" her assessments because she was unsatisfied with how the Association and its insurance company were handling repairs to her unit. On September 1, 2015, the Association recorded a certificate of lien upon Messersmith's unit for the unpaid assessments, late fees, and other expenses.

{¶ 5} In March 2015, in Warren County Court of Common Pleas Case No. 15CV87000, Messersmith filed suit against the estate of Ramminger, alleging he was negligent in causing the fire. In March 2016, Messersmith moved to add the Association and its insurer, Traveler's Insurance, as defendants. The trial court granted Messersmith's motion to join those parties, and in April 2016, Messersmith filed an amended complaint reasserting

her negligence claim against Ramminger's estate and asserting new claims against the Association for breach of contract and indemnity. Messersmith alleged that the Declaration required the Association to maintain hazard insurance on all units and the Association had failed to fully compensate her for the fire damage her unit sustained.

{¶ 6} The Association moved to dismiss Messersmith's claims against it for failure to state a claim upon which relief may be granted. Its motion was denied. Thereafter, the Association filed an answer to Messersmith's complaint, in which it generally denied the allegations and set forth the affirmative defenses of estoppel and laches.

{¶ 7} In November 2015, while Messersmith's case against Ramminger's estate, the Association, and Traveler's Insurance was pending, PHH Mortgage Corporation f.k.a. Cendant Mortgage Corporation d.b.a. Coldwell Bank Mortgage Corporation ("PHH Mortgage"), filed a foreclosure action against Messersmith in Warren County Court of Common Pleas Case No. 15CV87913. PHH Mortgage asserted Messersmith had defaulted on the payment terms of a promissory note, which was secured by a mortgage on her unit.

{¶ 8} The Association was named as a defendant in the foreclosure suit as it had filed the certificate of lien against Messersmith's condominium unit for the unpaid assessments. The Association filed an answer to PHH Mortgage's complaint and a cross-claim against Messersmith, seeking damages for unpaid assessments, late fees, the costs associated with filing the certificate of lien against the property, and attorney fees. The Association also sought foreclosure of its lien on the property, asking the court for an appraisal and order of sale for Messersmith's unit.

{¶ 9} In October 2016, PHH Mortgage voluntarily dismissed its foreclosure complaint against Messersmith. The Association's cross-claims for damages for unpaid assessments and for foreclosure of its lien remained pending. In March 2017, the trial court consolidated the foreclosure case with Messersmith's lawsuit for damages resulting from the fire at her

neighbor's condominium unit. Shortly thereafter, Messersmith voluntarily dismissed her claims against the Association that originated in the fire damages case. The dismissal did not affect the claims made by the Association in the foreclosure case.

{¶ 10} On April 6, 2017, the Association moved for summary judgment against Messersmith on its cross-claim for foreclosure and for damages related to the unpaid assessments. It argued Messersmith was in default of payment of assessments totaling $6,180.62 through March 31, 2017, plus the sum of $210.00 per month beginning April 1, 2017 for continuing assessments, $20.00 per month for late fees on future assessments not paid when due, and $310.00 for the filing of the certificate of lien on Messersmith's property. It also sought attorney fees in the amount of $4,759.90 for attorney services related to its cross-claim in the foreclosure proceeding. In support of its motion for summary judgment, the Association attached the affidavits of Christopher Wiggins, the managing agent of the Association, and Amy S. Ferguson, the attorney for the Association. The Association subsequently filed an amended affidavit by Ferguson in July 2017, in which Ferguson stated the Association had incurred attorney fees in the amount of $4,962.40 for services related to its cross-claim.

{¶ 11} Messersmith received leave to file a memorandum in opposition to the Association's motion for summary judgment. In Messersmith's August 2017 memorandum in opposition, she argued there were genuine issues of material fact that existed to warrant a denial of the Association's motion. Specifically, Messersmith argued there were issues of fact relating to the amount and type of damages the Association was entitled to receive for unpaid assessments as she had made efforts to tender payment to resolve the delinquencies, but her efforts had been rejected by the Association. Messersmith also argued issues of fact existed as to whether she should be required to pay the Association's

attorney fees. In support of her arguments, she attached her own affidavit, in which she averred, in relevant part, as follows:

> 6. While I agree that I am responsible for outstanding dues to [the Association], I dispute that my (sic) liability for [the Association's] attorney's [fees] and costs.
>
> 7. As a preliminary matter, I dispute that such attorney's fees are reasonable, usual and customary fees, as I do not believe that Ms. Ferguson or attorneys representing [the Association] have acted in a reasonable, usual and customary fashion * * *.
>
> 8. I have made several attempts to resolve the matter of the outstanding dues owed to [the Association], whether directly with [the Association] or through their legal counsel * * *.
>
> 9. My efforts to tender payment to [the Association] for outstanding and delinquent dues were rebuffed, as I was advised to have no contact with them.
>
> 10. I made several efforts to obtain a balance for outstanding and delinquent dues from [the Association's counsel], but [they] were unresponsive to me.
>
> 11. The conduct of [the Association] and their agents created the circumstances under which I was unable to make payment of outstanding and delinquent dues; I should not be required to pay late charges as they failed to mitigate their damages.
>
> 12. The conduct of [the Association] and their agents created the circumstances under which I was unable to make payment of outstanding and delinquent dues; I should not be required to pay late charges as they have not acted in good faith.
>
> * * *
>
> 14. The conduct of [the Association] and their agents created the circumstances under which I was unable to make payment of outstanding and delinquent dues; I should not be required to pay late charges as they are no less to blame and come to the Court seeking such fees and costs with unclean hands.
>
> 15. I am asking the Court to determine the total outstanding and delinquent dues that I owe and to deny [the Association] attorney's fees and costs.

{¶ 12} The parties appeared before a magistrate on September 22, 2017. At this hearing the parties agreed to brief a disputed legal question regarding whether the Association would have had an obligation to accept payment of less than the full amount of assessments, fees, and penalties asserted due if such payment had been offered by Messersmith. The parties also agreed to submit stipulated facts to the court to assist in the resolution of the disputed issues, including attorney fees. The parties were advised that if they felt the issue of attorney fees could not be adequately decided upon their stipulations, then an evidentiary hearing could be scheduled to further develop the record. However, no such hearing was requested.

{¶ 13} The parties' stipulated facts were filed with the court on October 18, 2017, and provide as follows:

### FACTS THAT ARE NOT IN DISPUTE

1. Melissa Messersmith is the owner of [property] located in Bay Pointe Development at Kings Mills, Warren County, Ohio.

2. Pursuant to the Declaration of Covenants, Conditions and Restrictions for Bay Pointe at Kings Mill, recorded with the Warren County Recorder's Office * * * all owners are required to pay assessments to the Association.

3. Messersmith agrees she owes certain regular and special assessments to the Association, although Messersmith disputes that she owes late fees for failure to pay the assessments.

4. The rate of the Association's attorney is reasonable and the work detailed in the amended Affidavit of Amy Ferguson, filed concurrently with the Association's brief which contains the final detail of fees claimed owed and the work performed, was in fact performed, although Messersmith disputes that she owes attorney fees to the Association.

5. Messersmith had a casualty occur in her unit on December 23, 2013.

6. Messersmith's late fees after the fire were waived by the Association and her assessments were paid after the fire by

insurance such that on March 2, 2015, Messersmith had an $11.00 credit with the Association.

7. Messersmith did not pay assessments to the Association after March 2, 201[5].

8. Messersmith wanted to make a settlement offer to the Association for the amount of the assessments owed only (not including the late fees and attorney fees) at some point after the foreclosure had been filed, however, because she was not certain with whom to communicate this offer, Messersmith did not make said tender.

9. For purposes of this Stipulation, the Association agrees that this Court may treat the facts as if Messersmith had offered to pay to the Association the assessments only, in an effort to settle this matter.

10. Had Messersmith made said offer of tender, the Association would have declined the same and would not have taken less than the full amount owed, which included attorney fees and late fees.

{¶ 14} Attached to the stipulated facts were a number of documents submitted by both parties, including emails exchanged between Messersmith and the Association and the Association and Messersmith's attorney, requests made by Messersmith or her attorney for itemization of the asserted assessments and fees due to the Association, and the itemization of the assessments and fees produced by the Association. The parties did not provide the court with a full copy of the Declaration or even the portion of the Declaration that provided for assessments, late fees, or attorney fees.

{¶ 15} The parties then filed supplemental memoranda addressing the issues in dispute. In Messersmith's memorandum, she indicated she was only "contest[ing] the late fees and the attorney fees, not the assessments themselves." Messersmith argued that the Declaration did not provide the Association with the ability to recover attorney fees and, furthermore, when the trial court "fully consider[ed] all of the circumstances of the case," the court could only reach the determination that the Association's claimed attorney fees were

not fair, just, or reasonable. Furthermore, she argued the late fees on the assessments and certain attorney fees should not be recoverable by the Association as the Association's refusal to communicate with her directly, rather than through her attorneys, and its refusal to accept less than the full amount it claimed it was owed prolonged the dispute and led to additional late fees and attorney fees being incurred.

{¶ 16} The Association argued in its memorandum that Messersmith was barred from arguing the defense of failure to mitigate damages as Messersmith had not pled mitigation as an affirmative defense. It further argued that it was not under an obligation to accept a partial payment by Messersmith for the past-due assessments and late fees, as doing so would have been construed as a waiver of its claims. Finally, it argued that it was entitled to collect attorney fees pursuant to R.C. 5312.13 and that the fees it was seeking to recover were reasonable, per the stipulations entered into by the parties. Attached to its memoranda was a second amended affidavit by Ferguson, in which she asserted the Association had incurred attorney fees in the amount of $13,361.50 for services related to its cross-claim for unpaid assessments. Attached to Ferguson's affidavit was a "statement of account" detailing work performed from February 9, 2015 through October 24, 2017 as well as the fees associated with such work.

{¶ 17} On January 5, 2018, after considering the parties' memoranda, affidavits, stipulations, and the documents attached thereto, the magistrate rendered a decision in which it granted the Association's motion for summary judgment.[1] The magistrate determined Messersmith had violated the terms of the Declaration by failing to timely pay assessments to the Association, the Association "was not obligated to accept an amount in comprise, and was entitled to continue to seek the entire amount of assessments as well as

---

1. The magistrate's January 5, 2018 decision was improperly labeled a "Magistrate's Order." On January 10, 2018, the magistrate discovered its mistake and rendered its judgment in a "Magistrate's Decision." The parties then filed objections to the magistrate's decision in accordance with Civ.R. 53(D)(3).

claimed fees," and under R.C. 5312.13, the Association was entitled to recover "court costs and reasonable attorney's fees." The magistrate ordered the Association be awarded the sum of $6,180.62 for assessments and late fees through March 1, 2017, with additional assessments accruing after that date, $310 for the cost of filing a lien against Messersmith's property, and reasonable attorney fees in the amount of $12,265.50. In determining the amount of attorney fees the Association was entitled to receive, the magistrate found "the itemization of fees reasonable, with a few exceptions." The magistrate stated, in relevant part, as follows:

> [O]n February 15, 2017, $18 is charged for "Review and process court cost refund." An evidentiary hearing on the issue of money damages was scheduled for September 22, 2017, but the issue was ultimately submitted on stipulations and briefs. The time spent preparing for this hearing looks reasonable. But on September 22, three items appear on the bill: $252 for "attendance of damages hearing;" $826 for "travel to and attend hearing on damages;" and again, "$973.50 is charged for "preparation for, travel to, from, and appear at hearing on damages." These charges appear to be duplicative. This Magistrate concludes the $18 court refund processing charge and the two charges on September 22, 2017 for $252 and $826 should be deducted from the total.

{¶ 18} Messersmith filed objections to the magistrate's decision. Messersmith did not attack the magistrate's decision to award assessments and late fees to the Association, but rather, challenged the award and amount of attorney fees ordered to be paid to the Association. Messersmith argued the court erred in awarding attorney fees as neither the pleadings nor the evidence presented to the magistrate demonstrated that the Declaration contained a contract provision requiring a defaulting condominium owner pay the attorney fees of a unit owners' association in an action to collect unpaid assessments. She further argued the award was unreasonable and against the manifest weight of the evidence where the Association's conduct and its attorney's conduct in refusing to communicate with her about the assessments and late fees caused additional attorney fees to be incurred. Finally,

although Messersmith "agree[d] that the rate of [the Association's] attorney is reasonable and the work detail[ed] in the Amended Affidavit of Amy Ferguson was in fact performed," Messersmith nonetheless challenged the "sufficiency" of Ferguson's affidavit.

{¶ 19} On April 3, 2018, the trial court overruled Messersmith's objections and adopted the magistrate's order in full.  In overruling Messersmith's objections, the court found that the magistrate "correctly applied the applicable law regarding the payment of attorney's fees to a homeowners' association under R.C. 5312.13" and the magistrate's decision awarding attorney fees was not against the manifest weight of the evidence.

{¶ 20} Subsequently, on May 2, 2018, the trial court issued its final judgment granting summary judgment to the Association.   In its final judgment entry, the court ordered Messersmith to pay the Association the same amount of damages for unpaid assessments, late fees, and costs as ordered in the magistrate's opinion.  However, the court then ordered Messersmith to pay the sum of $13,361.50 in attorney fees to the association.[2]  The court ordered that if Messersmith failed to pay the judgment together with the costs and any necessary advances therein within three days of the filing of its entry, Messersmith's property would be foreclosed and the property sold.  Messersmith filed an appeal.  She then moved to stay the trial court's order and set a supersedeas bond, and her motion was granted.

{¶ 21} Before us now is Messersmith's sole assignment of error, in which she alleges the following:

{¶ 22} THE TRIAL COURT ERRED IN AWARDING SUMMARY JUDGMENT TO BAY POINTE CONDOMINIUM ASSOCIATION * * * WITHOUT ADDRESSING THE DETAILS OF THE OBJECTION BY APPELLANT'S COUNSEL AND WITHOUT ADDRESSING THE

---

2. The trial court's May 2, 2018 entry granting summary judgment to the Association contains inconsistencies in the attorney fee award.  On page 3 of the entry, the court orders Messersmith to pay the Association "the sum of $12,265.90 as reasonable attorney fees and costs."  Later, on page 4 of the entry, the court orders Messersmith to pay "the sum of $13,361.50 as reasonable attorney fees and costs."

- 10 -

ISSUES OF THE SUFFICIENCY OF THE [ASSOCIATION'S] ATTORNEY'S AFFIDAVIT, THE [ASSOCIATION'S] FAILURE TO COOPERATE, AND THE EQUITY OF MAKING SUCH AN AWARD.

{¶ 23} Within her sole assignment of error, Messersmith raises a number of issues attacking the trial court's decision to grant summary judgment to the Association on the issue of attorney fees. She contends the trial court erred in its determination that the Association was entitled to recover attorney fees where the Declaration or "covenant on which the alleged fees are made the responsibility of the owner of a condominium is not in the record." She further contends that the court erred in awarding attorney fees to the Association without considering the equities of holding her liable for the attorney fees when it was the Association's own conduct, or the conduct of its attorneys, in refusing to communicate with her directly that caused additional and unnecessary fees to be incurred.

{¶ 24} Appellate review of a trial court's decision granting summary judgment is de novo. *Ludwigsen v. Lakeside Plaza, L.L.C.*, 12th Dist. Madison No. CA2014-03-008, 2014-Ohio-5493, ¶ 8. Pursuant to Civ.R. 56, summary judgment is appropriate when (1) there is no genuine issue of any material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) the evidence submitted can only lead reasonable minds to one conclusion and that conclusion is adverse to the nonmoving party, who is entitled to have the evidence construed most strongly in his favor. *Bank of New York Mellon v. Putman*, 12th Dist. Butler No. CA2012-12-267, 2014-Ohio-1796, ¶ 18. "The party moving for summary judgment bears the initial burden of demonstrating that no genuine issue of material fact exists." *Fifth Third Bank v. Bolera*, 12th Dist. Butler No. CA2017-03-039, 2017-Ohio-9091, ¶ 25, citing *Touhey v. Ed's Tree & Turf, L.L.C.*, 194 Ohio App.3d 800, 2011-Ohio-3432, ¶ 7 (12th Dist.). Once this initial burden is met, the nonmoving party "must then rebut the moving party's evidence with specific facts showing the existence of a genuine triable issue; it may not rest on the mere

allegations or denials in its pleadings." *Deutsche Bank Natl. Trust Co. v. Sexton*, 12th Dist. Butler No. CA2009-11-288, 2010-Ohio-4802, ¶ 7, citing Civ.R. 56(E).

## Statutory Authority for the Attorney Fee Award

{¶ 25} In the present case, Messersmith argues there remain genuine issues of material fact as to whether the Association is entitled to recover attorney fees incurred in its pursuit to collect on the unpaid assessments. In support for her argument, Messersmith relies on an opinion by the Ohio Supreme Court, in which the court held that

> [p]rovisions contained within a declaration of condominium ownership and/or condominium by-laws requiring that a defaulting unit owner be responsible for the payment of attorney fees incurred by the unit owners' association in either a collection action or a foreclosure action against the defaulting unit owner for unpaid common assessments are enforceable and not void as against public policy so long as the fees awarded are fair, just and reasonable as determined by the trial court upon full consideration of all of the circumstances of the case.

*Nottingdale Homeowners' Assn. v. Darby*, 33 Ohio St.3d 32 (1987), syllabus. Messersmith maintains that because the Declaration was not made a part of the record on summary judgment, the trial court could not have concluded that the Association was entitled to collect attorney fees as a matter of law.

{¶ 26} However, Messersmith's reliance on *Darby* is misplaced, as is her assertion that the court relied on a contract provision in the Declaration as authority for its order that Messersmith pay the Association's attorney fees. The trial court clearly relied upon R.C. 5312.13 in awarding attorney fees. R.C. 5312.13 provides that

> [t]he owners association and all owners, residents, tenants, and other persons lawfully in possession and control of any part of an ownership interest shall comply with any covenant, condition, and restriction set forth in any recorded document to which they are subject, and with the bylaws and the rules of the owners association, as lawfully amended. *Any violation is grounds for the owners association or any owner to commence a civil action for damages, injunctive relief, or both, and an award of court costs and reasonable attorney's fees in both types of action.*

- 12 -

(Emphasis added).

{¶ 27} R.C. 5312.13 therefore imposes a liability for attorney fees incurred by an owners association in seeking legal redress of a violation of "any covenant, condition, and restriction set forth in any recorded document to which they are subject." In the present case, Messersmith stipulated that the Declaration recorded in the Warren County Recorder's Office required her to pay assessments to the Association and that she did not pay said assessments after March 2, 2015. The Association also submitted an affidavit from Wiggins attesting to these facts. As Messersmith is an owner subject to a covenant which she violated, and her violation resulted in a civil suit by the Association to enforce compliance of the covenant, Messersmith is subject to an order requiring her to pay attorney fees pursuant to R.C. 5312.13. The stipulations entered into by Messersmith, in combination with the statutory imposition of liability for attorney fees by an owner in violation of covenants, eliminated any need to include the Declaration in the record as a prerequisite to an award of attorney fees. We therefore find no error in the trial court's determination that, as a matter of law, Messersmith was liable for reasonable attorney fees the Association incurred in pursuit of its action to collect the unpaid assessments. We therefore overrule Messersmith's assignment of error to this extent.

**Determination of Reasonable and Necessary Attorney Fees**

{¶ 28} Turning to the issue of the amount of attorney fees awarded, we first note that the record contains inconsistencies as to the amount of attorney fees Messersmith was actually ordered to pay. The magistrate's decision ordered Messersmith to pay $12,265.50 in attorney fees. Although the trial court "adopted in full" the magistrate's decision, the court's May 2, 2018 final judgment entry granting summary judgment to the Association ordered Messersmith to pay two different amounts in attorney fees. On page 3 of the court's entry,

Messersmith is directed to pay the Association "the sum of $12,265.90 as reasonable attorney fees and costs" and on page 4 of the entry, Messersmith is ordered to pay "the sum of $13,361.50 as reasonable attorney fees and costs." This discrepancy results in reversible error, as it is unclear from the record the reasonable attorney fees the Association was actually entitled to receive.

{¶ 29} Further, we find that reversal of the trial court's attorney fee award is appropriate in this case as there remains an issue of fact as to whether the services performed by the Association's attorney were necessary to resolve the disputed claims between the parties. Where attorney fees are awarded pursuant to the authority of a statute, the supreme court has outlined a two-step process for a trial court to follow when determining the amount of reasonable attorney fees to award to a prevailing party. *See Bittner* at the syllabus. *See also Bergman Group v. OSI Dev., Ltd.*, 12th Dist. Clermont No. CA2009-12-080, 2010-Ohio-3259, ¶ 68. First, the trial court must calculate the number of hours reasonably expended on the case multiplied by a reasonable hourly rate. *Id.* at ¶ 69, citing *Bittner* at the syllabus. The court should then exclude any hours which were unreasonably expended. *Id.* "Unreasonably expended hours are generally categorized as those which are excessive in relationship to the work done, are duplicative or redundant, or are simply unnecessary." *Gibney v. Toledo Bd. of Edn.*, 73 Ohio App.3d 99, 108 (6th Dist.1991). The resulting figure provides the trial court with an objective, initial estimate of the value of the attorney's services. *Bergman Group* at ¶ 69, citing *Bittner* at 145.

{¶ 30} Second, the trial court may modify its initial calculation after contemplating the factors set forth in Professional Conduct Rule 1.5, formerly DR2-106(B). *Id.* at ¶ 70, citing *Bittner* at the syllabus. The factors in Professional Conduct Rule 1.5 include the following:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services;

(8) whether the fee is fixed or contingent.

{¶ 31} In the present case, the parties stipulated only that the "rate of the Association's attorney was reasonable" and that the work detailed in the amended affidavit of the Association's attorney "was in fact performed." There was not a stipulation as to whether the work completed by the Association's attorney was actually necessary to resolve the Association's cross-claim for the unpaid assessments. There remained disputed genuine issues of material fact as to whether the Association's attorney expended hours on unnecessary work and whether any unnecessary work was caused by the Association's or the Association's attorney's failure to cooperate and communicate directly with Messersmith to resolve the dispute over the unpaid assessments.

{¶ 32} With respect to this latter issue, the information submitted by the parties indicates that Messersmith was, at least initially, unrepresented in the foreclosure case, Case No. 15CV87913, but was represented by counsel in her civil case to pursue damages resulting from the fire, Case No. 15CV87000. Messersmith appeared in the foreclosure case pro se when she filed a letter challenging PHH Mortgage's motion for default judgment and a

letter challenging the Association's request to appoint a receiver. In an October 7, 2016 letter filed with the foreclosure court, Messersmith indicated she had been personally working to resolve the issue of unpaid assessments since November 12, 2015, but the Association and the individuals that managed Bay Pointe would not deal directly with her. Messersmith's letter stated, in relevant part, as follows:[3]

> On November 12, 2015, 23 months after the fire, I finally received a check in the amount of $15,543.51 from the Homeowners' Association at Bay Pointe. * * *
>
> The day that I received the check, I called the property management company in an attempt to settle the unpaid condo fees that I owed. I was told by someone in the accounting department that [I] was not allowed to contact the property management company at all. I was then told that a lien had been filed against my property. At a later date I was sent an email by the [Association's] attorney that stated I was not to contact the property management company directly, I was to go through my attorney, even though he is not representing me on this matter.
>
> Several days after finally receiving my reimbursement check, I received notification form the courts that a lien had been filed against my property at Bay Pointe. Since then, the attorney handling my civil case has attempted to contact them on my behalf, in an attempt to settle on the late condo fees. After months of being ignored by them I was told that lawyers are busy and I need to be patient. * * *

{¶ 33} Documents attached to the parties' stipulations also indicated that prior to December 15, 2015, Messersmith was having difficulty communicating with the Association about the unpaid assessments and her efforts to obtain a statement had been rebuffed. In an email sent on December 15, 2015 to her attorney in the fire damages case and to the Association's counsel, Messersmith stated as follows:

> [The Association's attorney] is telling me I am not allowed to contact the HOA for any reason. I have spent numerous emails asking when and where the next HOA meeting is. [The property managers] refuse to speak to me or answer this pretty simple question. I also called to get a copy of my latest statement from

---

3. The October 7, 2016 letter was among those documents attached to the parties' stipulated facts.

the HOA; I was told by the new Accounts Receivable person that I am not allowed to speak to her.

Neither of these questions have anything to do with the fire. Am I to understand that I am not allowed to contact the HOA at all about anything? I can understand not contacting them about the fire, but beyond that, I don't see how the HOA can just choose to ignore me (as much as I wish I could just ignore them!)

Also, if * * * I am not allowed to contact the HOA for any reason and all communications have to go thru their attorney, I expect the HOA to do the same. They should not be sending me any communications about anything without sending it to you first. They continue to send me letters and all sorts of communications via mail and email * * *. Why are they contacting me directly if I am not allowed to contact them directly?

{¶ 34} A few minutes after sending this email, Messersmith sent a subsequent email to the Association's attorney, informing the attorney he was "not meant to be copied" on the foregoing email and he should "ignore it." The Association's attorney responded with an email informing Messersmith that because she was represented by counsel, the Association's attorney could not communicate directly with her. The Association's attorney directed Messersmith to put all further communication in writing and mail it to his attention. However, Messersmith continued to email the Association and its attorney directly, seeking information about the unpaid assessments, late fees, and attorney fees associated with the assessments.

{¶ 35} Messersmith's attorney in the fire damages case also began emailing the Association's attorney on her behalf to obtain information about the assessments and late fees accruing on her condominium in the foreclosure case. On June 30, 2016, July 22, 2016, and July 26, 2016, Messersmith's counsel emailed the association asking for an "updated HOA statement" or "statement for the dues and the attorney fees in the Messersmith foreclosure action." The Association, through its attorney, provided statements of account

detailing assessments, late fees, and attorney fees as of July 31, 2016, and January 31, 2017.

{¶ 36} Whether the Association or its counsel caused a delay in responding to Messersmith's request for information to resolve the unpaid assessment issue – a request that may have been made as early as November 12, 2015, whether such delay caused additional and unnecessary legal expenses to be expended, and whether any of the expenses listed in Ferguson's second amended affidavit in support of attorney fees were unnecessary expenses are issues of fact that remain to be decided. The parties' limited stipulations and the evidence submitted in support of their respective positions on the issue of summary judgment do not resolve these issues. Therefore, based on upon the record before us, we sustain Messersmith's assignment of error to the extent that it challenges the amount of attorney fees awarded. We vacate the trial court's judgment as it relates to the award of attorney fees and remand the matter to the trial court to conduct such proceedings as are necessary to determine the issue of reasonable and necessary attorney fees.

{¶ 37} Judgment reversed to the limited extent set forth above and remanded for further proceedings.

RINGLAND and M. POWELL, JJ., concur.