[Cite as *Clark v. Enchanted Hills Community Assn.*, 2020-Ohio-553.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
HIGHLAND COUNTY

| | | |
|---|---|---|
| BETTY L.  CLARK, | : | Case No. 19CA4 |
| | : | |
| PLAINTIFF-APPELLEE | : | |
| v. | : | |
| | : | DECISION AND JUDGMENT |
| THE ENCHANTED HILLS | : | ENTRY |
| COMMUNITY ASSOCIATION, ET AL., | | |
| | : | |
| DEFENDANT-APPELLANT | : | |

APPEARANCES:

Tyler E. Cantrell, Office of Young & Caldwell, LLC, West Union, Ohio, for Appellant.

John W. Judkins, Judkins & Hayes, LLC, Greenfield, Ohio, attorney for Anita Brewer, Connie Myers, Carol Morris, Greg Setola, and Jeremy Myers. [1]

The Enchanted Hills Community Association, Susan K. Thornhill, Statutory Agent. [2]

Smith, P. J.

{¶1} This is an appeal of a January 29, 2019 judgment entry of the Highland County Court of Common Pleas which awarded judgment in favor of Betty L. Clark ("Appellant") and against The Enchanted Hills Community Association ("EHCA").  Appellant's complaint for declaratory judgment was resolved on

---

[1] Collectively, these persons were "board members" or "trustees" of the Enchanted Hills Community Association.
[2] Neither the Enchanted Hills Community Association and Susan K. Thornhill nor the other individual defendants have participated in this appeal.

default judgment.  Later, the trial court made no compensatory award to Appellant for her claims against the EHCA.  However, the trial court did award Appellant statutory attorney fees in the amount of $6,125.00.  Within her sole assignment of error, Appellant challenges the trial court's decision denying her compensatory damages and limiting her attorney fees.  Having reviewed the record, we find no merit to Appellant's arguments.  Accordingly, Appellant's assignment of error is overruled, and the judgment of the trial court is affirmed.

FACTS

{¶2} EHCA is a planned community consisting of lots in the Enchanted Hills and Rocky Fork Point subdivisions of Paint Township, Highland County, Ohio.  In 1970, EHCA was incorporated, and its articles of incorporation and bylaws were filed with the Secretary of State of Ohio.  In 2010, the General Assembly enacted the Ohio Planned Community Law in R.C. Chapter 5312.  2010 Am. Sub. S.B. No. 187.  Therefore, EHCA is a planned community subject to R.C. Chapter 5312.  *See Keltz v. Enchanted Hills Community Assn.,* 4th Dist. Highland No. 12CA16, 2014-Ohio-866.  Throughout the years, Appellant has had disputes with EHCA, particularly with the way the planned community has been managed by its trustees.  *See generally Clark v. Enchanted Hills Community Assn.* 4th Dist. Highland No. 16CA12, 2017-Ohio-2999.

{¶3} Appellant is the owner of several lots in both the Enchanted Hills and Rocky Fork Point subdivisions. On October 16, 2017, Appellant filed a declaratory judgment action pursuant to Chapter 5312 of the Ohio Revised Code. Appellant alleged that EHCA has managed the planned community in a manner inconsistent with its authority and inconsistent with previous court orders.[3] Relative to this appeal, Appellant alleged that EHCA allowed campsites to be erected which were in violation of the community association's restrictions and covenants. Appellant alleged that these actions damaged her by limiting and restricting her ability to use her property as intended.

{¶4} On November 15, 2017, EHCA, through the previously noted individual defendant trustees, attempted to file an answer. On January 16, 2018, Appellant filed a Motion to Vacate and for Default Judgment pursuant to Civil Rule 55. The trial court ordered the answer stricken as it pertained to EHCA. Furthermore, the court granted default judgment in favor of Appellant and against EHCA. By agreement, the remaining individual named defendants were dismissed.

{¶5} After granting default judgment, the trial court set the matter for a damages hearing. At the hearing, Appellant testified as to her damages with regard

---

[3] Appellant specifically alleged that Enchanted Hills violated owners association duties described in Chapter 5312 by 1) failing to adopt a budget; 2) failing to maintain insurance; 3) failing to keep proper accounting; and 4) failing to follow covenants, conditions and/or deed restrictions.

to her campsites and to her attorney fees.  Appellant's counsel also testified as to

his fees claimed for services rendered in the matter.  Appellant's counsel also filed

a post-hearing Memorandum in Support of Claim for Damages.

{¶6} The trial court filed a Decision on Damages Hearing on January 17,

2019, denying compensatory damages and granting attorney fees.  The trial court

entered judgment on January 29, 2019, in favor of Appellant and against EHCA in

the amount of $6,125.00 for her attorney fees.  The Court did not grant judgment

for compensatory damages.

{¶7} This timely appeal followed.  Additional facts, where pertinent, are set

forth below.

ASSIGNMENT OF ERROR

> "I. THE TRIAL COURT ERRED IN GRANTING THE AMOUNT
> OF DAMAGES UPON PLAINTIFF'S/APPELLANT'S MOTION
> FOR DEFAULT JUDGMENT."

{¶8} Within the sole assignment of error, Appellant first asserts that the trial

court erred by failing to award compensatory damages in the amount of

$60,400.00.  Her second assertion is that the trial court erred by failing to award

the full requested amount of attorney fees, $13,771.30.  Appellant argues that due

to the nature of the disposition of this case, via default judgment, Appellant is

entitled to have the allegations contained in the complaint taken as admitted and

true.  Therefore, Appellant concludes that the above-requested amounts are not in dispute.  For the reasons which follow, we disagree.

### A.  Compensatory damages

#### 1.  Standard of Review

{¶9} A reviewing court ordinarily will uphold a trial court's damage award if it is not against the manifest weight of the evidence.  *Downard v. Gilliland,* 4th Dist. Jackson No. 07CA11, 2008-Ohio-3155, at ¶ 7.  *See Shemo v. Mayfield Hts.*, 88 Ohio St.3d 7, 10, 722 N.E.2d 1018 (2000); *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978), syllabus.  This standard of review is highly deferential and even "some" evidence is sufficient to support a court's judgment and to prevent a reversal.  *See Barkley v. Barkley*, 119 Ohio App.3d 155, 159, 694 N.E.2d 989 (4th Dist.1997); *Willman v. Cole*, 4th Dist. Adams No. 01 CA725, 2002-Ohio-3596, ¶ 24.

#### 2. Legal Analysis

{¶10} Before a money judgment may be awarded, evidence of the damages must be established.  *Labonte v. Labonte,* 4th Dist. Meigs No. 2008-Ohio-5086, at ¶ 19.  "Ohio courts have found that, once a right to damages has been established, that right cannot be denied because damages are incapable of being calculated with mathematical certainty.  (Internal citation omitted.)  However, the amount of damages must be susceptible of ascertainment in some manner other than by mere

speculation, conjecture or surmise." *Labonte, supra,* quoting, *Pingue v. Pingue* (Nov. 6, 1995), 5th Dist. No. 95CAF02006, at *10. *See also Barnhart v. Montgomery* (April 30, 1987), 4th Dist. No. 1821, at *5.

{¶11} In the context of damages on default judgment, generally, no proof of damages is required for a liquidated damages claim. *See Buckeye Supply Co. v. N.E. Drilling Co.,* 24 Ohio App.3d 134, 136, 493 N.E.2d 964 (9th Dist.1985) ("It has always been within the discretion of the trial court to determine whether further evidence is required to support a claim against a defaulting defendant."). A liquidated damages claim is one "that can be determined with exactness from the agreement between the parties or by arithmetical process or by the application of definite rules of law." *Huo Chin Yin v. Amino Prods. Co.,* 141 Ohio St. 21, 46 N.E.2d 610 (1943); *see also Farmers & Merchants State & Savs. Bank v. Raymond G. Barr Ents., Inc.,* 6 Ohio App.3d 43, 452 N.E.2d 521 (4th Dist.1982) (agreeing that proof of damages is not required where the claim is based on a written instrument, a contract stating a specific amount, or on an account). However, "Ohio law requires the presentation of proof of damages for an unliquidated claim before any can be awarded." *Faulkner v. Integrated Servs. Network, Inc.,* 8th Dist. Cuyahoga Nos. 81877 and 83083, 2003-Ohio-6474, at ¶ 26.

{¶12} In this case, Appellant claims allegations made in two branches of the complaint entitle her to a damage award of $60,400.00. This figure represents

damages claimed in Branches 2 and 5 of the complaint.  In Branch 5 of the complaint, paragraph 69, Appellant alleged that EHCA's violations of certain covenants and deed restrictions damaged her lots in the amount of $50.00 per day. Appellant also testified at the damage hearing that this damage began on October 3, 2016, and continued for 758 days. Appellant concluded she was entitled to $37,900.00 for these damages.[4]

{¶13} Appellant also testified at the hearing that she had been prohibited from renting a mobile home by EHCA's actions.  She testified that she could have rented her mobile home and lot for $500.00 a month, for a total of $22,500.00 from a date in 2012.  The exact date was never clarified.  Appellant argues these damages relate this to Branch 2 of the complaint.  Our review of the complaint, however, demonstrates that these allegations are not explicitly stated.

{¶14} We begin by setting forth the pertinent portions of the damages hearing testimony, relating to Branch 5, as follows:

Q:     You also in your complaint talked about $50.00 a

        day damages for the campground.  From October 3rd, 2016

        in which the new or alleged agent was put in until

        November 1st when the entry was put on, what would

        the total be?

---

[4] Appellant essentially testified that the violations of covenants and restrictions were demonstrated by the number of complaints she received about 4-wheelers and golf carts "running around her campsite."

A:      $37,900.00.

***

At this juncture, the trial court commented:

> I don't have the faintest idea about this campground thing.
>
> And the fact that she stands up here and says its $50.00
>
> a day for x-number of days, I'm not gonna give her $50.00
>
> a day for x-number of days unless she can prove to a
>
> reasonable degree of certainty the amount of her damages
>
> * * * because as you know, uh, Ohio goes with the American
>
> rule with respect to damage. *** I don't know why she's been
>
> damaged.

Counsel followed up with additional questions:

Q:      If campsites had been allowed, would you have installed
        a camp site in any of your lots?

A:      I probably would have.

Q:      And approximately how much do you believe camp
        sites are renting for?

A:      I'm guessing maybe a hundred dollars a weekend or
        something.

Q:      So about $50.00 a day?

A: Probably.

The trial court stated: She said 'I'm guessing.' And I'm not going to accept guesstimate. Appellant's counsel thereafter inquired as to what she felt the decrease in value was and she answered: "I felt it was $50.00 a day."

{¶15} Appellant also argues loss allegedly set forth in Branch 2. Appellant testified that she lost money in the amount of $500.00 per month, resulting in a total loss of $22,500.00, due to EHCA's prohibiting her from renting her mobile home.

Q: And have you incurred any other damages as a result of this action?

A: Yes.

Q: And what was it for?

A: I purchased Lot 4 in Enchanted Hills. ***And I put a mobile home there. * * * And I never finished it because they said I wasn't allowed to do it. So that cost me $22,500.00.

Q: And how did you come to that amount?

A: Because I was gonna rent it for…I could rent it for $500.00 a month.

Q: And that was for how many months?

A:      (35 ?) [sic] Months.

***

Q:      And so because you were not able to rent it, were you able to receive the rental fee that you would have received on that property?

A:      No, I was not.

Q:      And I think you've already discussed it, but you would have received how much per month?

A:      I think it was $22,000.00 but I'm not sure.

Q:      How much per month?

A:      $500.00 per month.

Q:      Okay.  And that would have been from when you placed the mobile home there…

A:      Yes.

Q:      …until currently, is that correct?

A:      Yes.

{¶16} We find the trial court's failure to order compensatory damages in this case is a decision which is not against the manifest weight of the evidence.  We agree there is a lack of evidence as to any reasonable or ascertainable evidence of damage.  As to the claim for damage to her

campsite, Appellant testified she "felt" like she was damaged $50.00 a day.

Additional questioning did not reveal a definite, ascertainable number or

reason for her claimed damages. As to the claim for her inability to rent her

mobile home site, Appellant testified she "was gonna" rent the mobile home

but was prevented from doing so for thirty-five months. She testified she

had located the mobile home on her lot "sometime" in 2012. All of this

testimony is best described as speculation and conjecture.

{¶17} In the trial court's Decision on Damages Hearing, the court

stated:

> Plaintiff submitted no evidence of the value of her lot and/or
>
> evidence of a diminished value of her lot as a proximate cause
>
> of the Defendants' action. In addition, Plaintiff produced no
>
> evidence that the actions of Defendants prevented her rental
>
> of her lot nor did she produce evidence that her lot could have
>
> been rented and/or what the rental rate would have been.
>
> Plaintiff's testimony was basically, I am entitled to $50.00
>
> per day. Whether there is a default or not, this Court cannot
>
> speculate on the amount of damages to be awarded the
>
> prevailing party.

{¶18} The trial court's judgment is based on the longstanding principle that evidence of damage must be established.  Appellant failed to establish evidence of her alleged damages. The trial court declined to speculate.  For these reasons, we find the trial court's judgment denying compensatory damages is not against the manifest weight of the evidence.

B.  Attorney fees

1.  Standard of Review

{¶19} We generally review a trial court's decision on a request for attorney fees for an abuse of discretion. *2-J Supply Company, Inc., v. Garrett & Parker, LLC,* 4th Dist. Highland No. 13CA229, 2015-Ohio-2757, at ¶ 9; *See e.g. Hamilton v. Ball,* 2014-Ohio-1118, 7 N.E.3d 1241, ¶ 78 (4th Dist.).  To constitute an abuse of discretion, the trial court's decision must be unreasonable, arbitrary, or unconscionable.  *State v. Adams,* 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980); *State v. Schroeder,* 4th Dist. Adams No.18CA1077, 2019-Ohio-4136, at ¶ 19.

2. Legal Analysis

{¶20} Appellant requested $13,771.30 in attorney fees in her complaint and she testified to this amount at the damages hearing.  In general Ohio follows the "American rule" for the recovery of attorney fees: a prevailing party in a civil action cannot recover attorney fees as part of the costs of the litigation.  *2-J Supply, supra,* at ¶ 12; *State ex rel. Varnau v. Wenninger,* 131 Ohio St.3d 169,

2012-Ohio-224, 962 N.E.2d 790, ¶ 23. However, well-recognized exceptions to this general rule authorize an award of attorney fees when: (1) a statute requires it; (2) an enforceable contract provides for it; or (3) the prevailing party demonstrates bad faith on the part of the unsuccessful litigant. *Wilborn v. Bank One Corp.,* 121 Ohio St.3d 546, 2009-Ohio-306, 906 N.E.2d 396, ¶ 7; (Internal citations omitted.). *Forsthoeffel v. Altier,* 4th Dist. Athens No. 06CA15, 2006-Ohio-7106, ¶ 18.  In this case, the statutory authority is found in Chapter 5312 of the Ohio Revised Code.

{¶21} The Twelfth District Court of Appeals recently considered similar issues in *PHH Mortgage Corporation v. Messersmith*, 12th Dist. Warren No. CA2018-05-057, 2019-Ohio-594.  The case was decided on summary judgment. The underlying facts are not pertinent to our case.  However, on appeal, Messersmith asserted that there were general issues of material fact as to whether one of the defendants, a homeowners' association, was entitled to collect attorney fees pursuant to R.C. 5312.13.

{¶22} The *Messersmith* court noted that R.C. 5312.13 imposes liability for attorney fees incurred by an owners association or any owner in seeking legal redress of a violation of "any covenant, condition, and restriction set forth in any recorded document to which they are subject." *Id*.  The court also observed that where attorney fees are awarded pursuant to the authority of a statute, the Supreme Court of Ohio has outlined a two-step process for a trial court to follow when

determining the amount of reasonable attorney fees to award to a prevailing party. *See Bittner v. Tri-County Toyota, Inc.,* 58 Ohio St. 3d 143, 146, 569 N.E.2d 464, 467 (1991), at the syllabus. *See also Bergman Group v. OSI Dev., Ltd.,* 12th Dist. Clermont No. CA2009-12-080, 2010-Ohio-3259, ¶ 68. The *Messersmith* court explained that first the trial court must calculate the number of hours reasonably expended on the case multiplied by a reasonable hourly rate. *Id*. at ¶ 69, citing *Bittner* at the syllabus. The court should then exclude any hours which were unreasonably expended. *Id*. "Unreasonably expended hours are generally categorized as those which are excessive in relationship to the work done, are duplicative or redundant, or are simply unnecessary." *Gibney v. Toledo Bd. of Edn.,* 73 Ohio App.3d 99, 108 (6th Dist.1991). The resulting figure provides the trial court with an objective, initial estimate of the value of the attorney's services. *Bergman Group* at ¶ 69, citing *Bittner* at 145.

{¶23} *Messersmith* explained that the second part of the analysis provides that the trial court may modify its initial calculation after contemplating the factors set forth in Professional Conduct Rule 1.5, formerly DR2-106(B). *See Messersmith* at ¶ 30; *Bergman Group* at ¶ 70, citing *Bittner* at the syllabus. *Messersmith* emphasized the following factors enumerated in Professional Conduct Rule 1.5:

(1) the time and labor required, the novelty and difficulty of the

questions involved, and the skill requisite to perform the legal

service properly;

(2) the likelihood, if apparent to the client, that the acceptance

of the particular employment will preclude other employment

by the lawyer;

(3) the fee customarily charged in the locality for similar legal

services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the

client;

(7) the experience, reputation, and ability of the lawyer or

lawyers performing the services;

(8) whether the fee is fixed or contingent.[5]

{¶24} In this case, Appellant testified that she had incurred attorney fees in the amount of $13,771.30 and that she would further owe her attorney $2,750.00.

---

[5] Ultimately, the *Messersmith* court concluded that genuine issues of material fact remained as to whether the Association's attorney expended hours on unnecessary work and whether any unnecessary work was caused by the Association's or the Association's attorney's failure to cooperate and communicate directly with Messersmith to resolve the dispute over the unpaid assessments. The trial court's judgment was reversed to a limited extent and remanded for further proceedings on the issue of the reasonableness of the attorney fees.

Given that the trial court awarded her only $6,125.00 for attorney fees, Appellant argues she is entitled to an additional $10, 396.30.  Appellant testified as follows:

Q:      And how many different attorneys have you employed

        during this action?

A:      Three.

***

Q:      And did all those attorneys bill you with what you

        considered according to the standards of the community?

A:      Yeah, I think so.

Q:      And in total, how much attorney's fees have you incurred?

A:      $13,771.30.

{¶25} Thereafter, Appellant's third attorney testified that he has practiced since 2010, primarily in Adams, Brown, Highland, and Scioto Counties.  Counsel testified:

My hourly rate for civil cases is $175.00 an hour.  That is

from my research and knowledge of everyone locally

that is approximately on cue the average rate for Adams,

Brown, and Highland, which ranges anywhere from $150.00

to $200.00 an hour.  Sometimes with a senior attorney, such as

the one in my office charging up to $250.00 per hour.  I

charge $175.00 an hour.  That was the agreement that

myself and Mrs. Betty Clark had when I began the representation

in this matter.

***

At the time, I had Mrs. Clark pay a $2,500.00 retainer, which

she paid. * * * I conducted a review and bill of all my hours,

and as of I think it was Thursday or Friday I had conducted

30 hours of legal work on this matter at the rate of $175.00

which if my math is correct would be $5,250.00. * * * Again,

the amount of hours, I believe, are appropriate for this matter

which was fairly complex and somewhat very confusing due

to the multiple cases that have been before this and dealing

with all the various entities that have been involved in this case.

{¶26} After our review, we find the trial court did not abuse its discretion in awarding attorney fees in the amount of $6,125.00.  We further find that competent credible evidence supports the trial court's judgment in this matter.  In the Decision on Damages Hearing, the court wrote:  "The Court has reviewed the file and the testimony of the plaintiff and has determined that a reasonable hourly rate and hours expended amount of $6125. (Fee incurred before hearing, $5250 and

hearing fees of $875.)" Furthermore, as the Supreme Court of Ohio explained in

*Bittner, supra,* 58 Ohio St.3d 143, 146, 569 N.E.2d 464, 467:

> It is well settled that where a court is empowered to award
>
> attorney fees * * *, the amount of such fee is within the
>
> sound discretion of the trial court. Unless the amount of
>
> fees determined is so high or so low as to shock the conscience,
>
> an appellate court will not interfere. The trial judge [who]
>
> participated not only in the trial but also in many of the
>
> preliminary proceedings leading up to the trial has an
>
> infinitely better opportunity to determine the value of
>
> services rendered by lawyers who have tried a case before
>
> him than does an appellate court.

*Motorist Ins. Companies v. Shields,* 4th Dist. Athens No. 00CA26, 2001-

Ohio-2387 (Jan. 29, 2001), at *8.

{¶27} The above principle holds true in this case as well. The trial court set

forth its reasoning in the Decision on Damages Hearing. The trial court cited the

correct formula for calculating attorney fees, as set forth above, as well as its

experience deciding attorney fee matters.[6] We find no merit to Appellant's

---

[6] The trial court noted that he had been a common pleas court judge for 40 years, had served on the Ohio Court of Claims, had served as visiting judge in approximately 40 counties in Ohio, and held 10-15 attorney fee hearings per year.

argument that the trial court abused its discretion in calculating reasonable attorney fees herein.

{¶28} Based on the foregoing, we find no merit to Appellant's sole assignment of error and as such, it is hereby overruled.

**JUDGMENT AFFIRMED.**

# **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED and costs be assessed to Appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Highland County Common Pleas Court to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J., & Hess, J.:  Concur in Judgment and Opinion.


                                                    For the Court,


                          BY:  _____
                                 Jason P. Smith
                                 Presiding Judge


## **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**